NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

WILLIAM QUINN, PETITIONER, v. HENRY BECKER & SON,
INC., AND NEW JERSEY MANUFACTURERS CASUALTY
INSURANCE CO., RESPONDENT:

WILLIAM QUINN, PETITIONER, v. HENRY BECKER & SON,
INC., AND GENERAL ACCIDENT F. & L. ASSURANCE
CORP., RESPONDENT.

Decided July 28, 1941.

For the petitioner, *David Roskein.*

For the respondent Henry Becker & Son, Inc., and General
Accident F. & L. Assurance Co., for accident of July 17th,
1939, *James J. Skeffington.*

For the respondent Henry Becker & Son, Inc., and New
Jersey Manufacturers' Casualty Insurance Co., for accident
of December 14th, 1937, *George E. Meredith.*

*     *     *     *     *     *     *

There appears to be no dispute with respect to the employment of the petitioner by the respondent on the dates of the respective occurrences, nor is there any serious controversy that he met with an accident that arose out of and in the course of his employment with the respondent, Henry Becker & Son, Inc., on December 14th, 1937. The primary question presented for determination is whether the petitioner's disability, the extent of which does not find any substantial difference of medical opinion, is due to said accident or whether the incident of July 17th, 1939, if it is to be legally construed as an accident within the meaning of the Workmen's Compensation Act, is to be charged with the resultant disability. Ordinarily, the same employee and employer being involved, it would be of only academic importance to decide this question. However, separate compensation carriers, who were respectively on the risk on the two aforementioned dates, have been joined in the two petitions as party respondents, and it thus becomes essential in order to adequately adjudicate the rights and obligations of all the parties here involved, to resolve that issue.

The evidence discloses without dispute that on December 14th, 1937, the petitioner was engaged in his regular work with the respondent as a driver of a milk truck. At about 8:00 A. M. that morning, while descending from his truck carrying a case of milk, he missed his step and fell, striking and injuring his right hand. The petitioner's hand became swollen, caused him considerable pain, and subsequently the injured member showed some ecchymosis. He was directed to the New Jersey Manufacturers' Hospital Association, where X-rays were taken and medical treatment was administered until December 22d, 1937. At first, petitioner's hand was bandaged and later a leather strap was applied to his wrist which he has worn regularly since. He returned to work with the aid of a helper for about ten days and thereafter performed his usual duties without assistance. The testimony indicated, however, that during the interval between December 14th, 1937, and July 17th, 1939, the hand would become stiff on occasions and that he suffered a considerable weakness

and loss of power in that member, so much so that objects did from time to time slip out of his fingers. Moreover, he also experienced difficulty in grasping objects.

On July 17th, 1939, during the course of his employment with respondent, the petitioner, while attempting to pick up several empty milk bottles, suddenly felt his right hand "give out," after which further medical treatment was required. Upon reporting said incident to his employer, he was again directed by the respondent to the New Jersey Manufacturers' Hospital pursuant to the terms of his compensation policy with the New Jersey Manufacturers' Casualty Insurance Co. in force on December 14th, 1937. The physicians in that hospital took an X-ray of petitioner's hand, and then refused to treat the petitioner, claiming that the said injury was not due to or associated with the accident of December 14th, 1937. The respondent thereupon referred the employee to the General Accident F. & L. Assurance Corp. under the terms of compensation policy in force on July 17th, 1939. This carrier, after an investigation and a physical examination by its physician, Dr. L. A. Cahill, refused to consider the injury as compensable as the result of an accident under the terms of its policy and contended that the condition was due to the accident of December 14th, 1937.

The petitioner was thus refused medical treatment by both insurance carriers, and the respondent, mindful of the statutory duty of the employer to furnish medical treatment to an injured employee, assumed that burden, and directed him to several hospitals, as well as physicians and specialists, who rendered various and extended medical services in an endeavor to relieve him of the disability from which he was suffering and restore normal function to the injured member. The respondent also undertook to and did pay compensation during the period of temporary disability from October 22d, 1939, to February 26th, 1940, a period of 24 weeks, at the compensation rate of $20 per week. Furthermore, the employer, at the termination of the fiscal year, reimbursed the petitioner for the difference between his compensation and his full wages. This excess is to be considered as a voluntary payment on the part of the respondent.

In short, we are confronted with two incidents, wherein a direct trauma was inflicted upon the petitioner's right hand and wrist when he fell, and the other, also called "giving away" and generalized weakness of the same wrist while in the performance of an act similar in every respect to the work which he had been accustomed to do, namely the carrying of several milk bottles. As to the latter occurrence, there appears to be no accompanying untoward event or unusual exertion or effort. There is no question in my mind that the petitioner did sustain a compensable accident on December 14th, 1937. The undisputed fact that he fell on that date while carrying a case of milk and injured his wrist and hand following which he was treated by the New Jersey Manufacturers' Casualty Insurance Co. at its hospital, in Newark, New Jersey, for that injury, and that thereafter he was obliged to wear a leather strap or support for his wrist continually, renders this conclusion inescapable. It seems fairly evident from the testimony that the petitioner's right hand, thus rendered weakened by the accident aforesaid, continued in that state up to the time of occurrence on July 17th, 1939. This is demonstrated by the necessity of his wearing a leather strap or support on that member in order to be able to perform the work required of him by the respondent. Without taking into consideration at this point the medical evidence, there is nothing in the testimony relating to the occurrence of July 17th, 1939, which is capable of being construed an accident within the meaning of the Workmen's Compensation Act. There was no unusual incident, no fall, nor striking of the member against any object, or for that matter any untoward event which took place on the latter date. There was nothing which could reasonably justify that occurrence as the cause of the fracture of the scofoid bone. It was not different in any respect from his ordinary usual work which he had been accustomed to perform. He was merely in the act of picking up some milk bottles in the ordinary and accustomed manner, when his wrist and hand "gave out."

The medical testimony leaves no doubt in my mind that the petitioner's hand at the time of the incident of July 17th, 1939, was in a weakened condition. This was undoubtedly

due to the accident of December 14th, 1937. X-rays taken subsequent to July 17th, 1939, disclose an ununited fracture of the scofoid bone of the right wrist which was medically described as an old fracture of long standing. This fact alone in my opinion is persuasive of the thought that the occurrence of July 17th, 1939, did not cause that fracture. But more compelling is the medical testimony that the activities of the petitioner on July 17th, 1939, as described by the witness, could not, by any stretch of the imagination, produce the fracture found to exist. Only a direct trauma such as a specific striking the scofoid bone or the hand being bent backwards forcefully or some other violent occurrence could cause such a fracture. The incident of July 17th, 1939, could hardly have produced such a condition. On the other hand, the testimony clearly indicates that the accident of December 14th, 1937, was the very type to produce the fracture as found in the X-ray films.

It is my opinion and I so find that the petitioner sustained an accident arising out of and in the course of his employment with the respondent on December 14th, 1937, wherein the scofoid bone of the right wrist was fractured. It further appears that either by reason of inadequate medical treatment or otherwise, the injured wrist and hand of the petitioner was thereafter left in a weakened condition and required continuous support of a leather strap or appliance in order that he be enabled to make use of that member. Evidently this type of relief was not wholly effectual as witnessed by recurring periods of stiffness and loss of grasping and retaining power during the entire period until July 17th, 1939. The incident that took place on that latter date, in my opinion, was nothing more than a recurring experience in which the symptoms of the injury again manifested themselves. It is reasonable to assume that had the petitioner not worn the leather supporting strap, an occurrence similar to the incident of July 17th, 1939, would have taken place at some earlier date. I accordingly find and determine that the petitioner did not suffer a compensable accident within the meaning of the Workmen's Compensation Act on July 17th, 1939.

The respondent attempted to inject in its medical testimony

the suggestion that the fracture as found was due to some causes unrelated to the petitioner's employment. Basic in our procedure under the Workmen's Compensation Act is the principal that a respondent who attempts to ascribe the disability of an employee to some other causes than the compensable accident, has the burden of proving that contention. *Atchison* v. *Colgate*, 102 *N. J. L.* 425; 131 *Atl. Rep.* 921. Mere conjecture by a medical witness, unsupported by any proven fact does not meet and overcome that burden. The proofs of the petitioner are uncontradicted with respect to the events beginning with the accident of December 14th, 1937, and continuing thereafter to the date of the hearing. He has specifically denied any other occurrence to which the injury and disability could be attributed. The undisputed evidence shows that the petitioner continued to work with the respondent during the entire period in question, which employment required his working seven days a week and that he performed his duties in an apparently satisfactory manner. The factual testimony is barren of any suggestion or intimation that any event other than that established by the petitioner's testimony occurred to which his disability could be ascribed. The respondent has offered no factual proof whatsoever of any extraneous occurrence in support of the medical suggestion of its doctor. I find that the respondent has failed to carry the burden in this regard.

Where a primary industrial accident causes a fracture which does not unite or results in poor bony union and therefore a weakened condition exists so that a secondary or subsequent event causes the disability to be prolonged, the original accident is responsible for the ultimate resultant condition. *Selak* v. *Murray Rubber Co.*, 8 *N. J. Mis. R.* 838; 152 *Atl. Rep.* 78; *affirmed*, 108 *N. J. L.* 548; 159 *Atl. Rep.* 93. There the petitioner fractured his left forearm in a compensable accident. Approximately six months after his return to work and while on his way home, he slipped and fell in the public highway and broke his left forearm in the same place where it had been previously broken. The appellate courts affirmed the deputy commissioner's finding that the bony union in the injured member had been incomplete and because of this weak-

ness due to the original accident, a condition existed which caused the subsequent occurrence to prolong the disability. It was held that the proximate cause of the injury was the first accident and compensation for all the ensuing disability resulting from the second accident was properly allowed. Where a reasonably prudent person innocently aggravates the harmful effect of the original injury, the original wrongful cause continues to the end, and accomplishes the final result. *Balton* v. *Public Service Corp.,* 75 *N. J. L.* 847; 69 *Atl. Rep.* 164; 18 *L. R. A.* (*N. S.*) 640; 127 *Am. St. Rep.* 853; *Kelly* v. *Lembeck & Betz Eagle Brewing Co.,* 86 *N. J. L.* 471; 92 *Atl. Rep.* 282; *Lazzio* v. *Prime Silk Co.,* 114 *N. J. L.* 450; 177 *Atl. Rep.* 251.

The authorities above cited are controlling in the case at bar. Even if we assume, for the purpose of discussion, that the incident of July 17th, 1939, was an accident, these adjudications, in my opinion, are dispositive of the issue to be determined in this cause. However, having determined that what occurred on that date was not an accident within the meaning of our statute, it becomes quite evident that the accident of December 14th, 1937, is responsible for the petitioner's present condition and disability and I so find. This determination requires the dismissal of the petition as to the respondent General Accident F. & L. Assurance Corp. and it is so ordered.

The respondent New Jersey Manufacturers' Casualty Insurance Company has also interposed the defense of the statute of limitations. The undisputed testimony is that the employer paid compensation for temporary disability from October 22d, 1939, to February 26th, 1940. This clearly is a payment of compensation within two years of the date of the filing of the petition. Similarly it is a payment of compensation within two years of the date of the accident of December 14th, 1937. The requirement of the statute *R. S.* 34:15-51; *N. J. S. A.* 34:15-51, is that "every claimant for compensation * * * shall * * * file a petition * * * within two years after the date on which the accident occurred * * * or in case a part of the compensation has been paid by the employer, then within two years after the last payment of

compensation * * *." Not only has the petitioner received payments of compensation for temporary disability from the respondent employer within the two-year limitation period, but it also appears that the respondent employer has paid considerable moneys to doctors and hospitals for the treatment of the petitioner in an effort to obtain relief of his symptoms. These payments also were made well within the limitation period prescribed by the act and are to be considered as payments of compensation within the meaning of the section of the statute above cited. They have the effect of extending the limitation period for two years from the date of the last payment. The very recently decided case of *Greif* v. *Betsy Ross Ice Cream Co.,* 19 *N. J. Mis. R.* 397; 20 *Atl. Rep. (2d)* 597, is authority for this interpretation. I therefore find and determine that the payments heretofore made by the respondent employer for temporary compensation and medical and hospital treatment were payments of compensation within the perview of the statute *R. S.* 34:15-51; *N. J. S. A.* 34:15-51, and that the petitions for compensation were filed within time.

\*          \*          \*          \*          \*          \*          \*

It is, therefore, * * * ordered that judgment be entered in favor of the petitioner and against the respondent Henry Becker & Son, Inc., and New Jersey Manufacturers' Casualty Insurance Co., its workmen's compensation insurance carrier on December 14th, 1937.

\*          \*          \*          \*          \*          \*          \*

And it is further ordered that the petition No. 48817 filed against Henry Becker & Son, and the General Accident F. & L. Assurance Corp. with respect to the alleged accident of July 17th, 1939, be and the same is hereby dismissed without costs to either party as against the other.

> HARRY S. MEDINETS,
> *Deputy Commissioner.*