STARRETT *v.* NAMOUR.

4-9559          242 S. W. 2d 963

Opinion delivered October 29, 1951.

*James P. Baker, Jr.,* for appellant.
*William J. Smith,* for appellee.

Ed. F. McFaddin, Justice. The Workmen's Compensation Commission denied appellant's claim, and only one point is argued here: "There is no substantial evidence . . . to uphold . . . the decision of the . . . Commission."

James S. Starrett was employed by Habib's Bakery, which was owned by the appellee, Namour, who carried compensation insurance with appellee, Employers' Liability Assurance Corporation, Ltd. About May 1, 1948, the employer, upon inquiry, learned that Mr. Starrett had an ulcer slightly above the ankle on the outer side of his left leg. The employer immediately had Mr. Starrett treated by Dr. Storm; and on May 7, 1948, Dr. Connally became the attending physician of Mr. Starrett. On May 9, 1948, Mr. Starrett was admitted to the hospital because the ulcer had failed to yield to treatment and his left leg was considerably swollen. He was suffering not only from the ulcer but also from arteriosclerosis in an advanced stage. Mr. Starrett remained in the hospital until his death on May 26, 1948, at the age of 69 years, 7 months and 10 days; and the death certificate, signed by Dr. Connally, said:

"Immediate cause of death:     Nephritis
"Due to:                        Arteriosclerosis
"Other conditions:             Trophic ulcer."

Claim was filed for Mr. Starrett on May 17, 1948; and, after his death, his widow,[1] as sole dependent, prosecuted her claim. The basis for the compensation claim was: that Mr. Starrett, while suffering from arteriosclerosis, sustained an injury to his ankle sometime about February, 1948, which injury resulted in the ulcer; that the ulcer, failing to heal because of the arteriosclerosis, required hospitalization and bed rest; that the bed rest, along with the arteriosclerosis, caused the nephritis which resulted in death. Claimant thus relies on our holdings to the effect that an injury is compensable when it aggravates a preëxisting condition. See *Triebsch* v. *Athletic Mining & Smelting Co.*, 218 Ark. 379, 237 S. W. 2d 26, and cases there cited.

---

[1] Mrs. Starrett died pending this appeal; and the claim is now prosecuted by her estate.

The claim was resisted on two grounds: (a) that any injury which Mr. Starrett sustained to his ankle occurred prior to April 25, 1946, and the claim based on that injury is therefore barred by limitations,[2] since it was not filed until May 17, 1948; and (b) that there is no causal connection between any injury to the ankle and the nephritis which resulted in Mr. Starrett's death. The Commission, after hearing doctors and lay witnesses, denied the claim because of defense (b)—i. e., absence of causal connection—; and found it unnecessary to decide the question of limitations. The denial of the claim by the Commission was affirmed by the Circuit Court; and this appeal followed.

At the outset the claimant recognizes the well known rule that if there be substantial testimony to support the Commission's findings, then the Commission will be affirmed. See *Lundell* v. *Walker,* 204 Ark. 871, 165 S. W. 2d 600; *J. L. Williams & Sons* v. *Smith,* 205 Ark. 604, 170 S. W. 2d 82; and *Tinsman Manufacturing Co.* v. *Sparks,* 211 Ark. 554, 201 S. W. 2d 573. But claimant contends that there is no substantial testimony to support the Commission's findings; and says that all of the testimony shows that there was a causal connection between Mr. Starrett's injury to his ankle and his death thereafter.

We hold against the claimant in this contention. The main question before the Commission was, whether Mr. Starrett received an injury which aggravated his arteriosclerosis. To decide that question the Commission had to weigh the testimony on several other questions, some of which were:

(1)—When did Mr. Starrett receive his injury?

(2)—Exactly where was the injury on his leg?

(3)—Were statements obtained from Mr. Starrett when he was partially irrational?

(4)—Did the claim adjuster for the insurance carrier "color" the statements from Mr. Starrett and the other witnesses by omitting some facts and over-emphasizing others?

[2] See Ark. Stats., § 81-1318, as amended by § 18 of Initiated Act No. 4 of 1948.

The Commission necessarily had to decide which witnesses to believe on the four questions above, because as to each matter the testimony was in conflict. There was introduced in evidence a signed statement from Mr. Starrett in which he said that he received the injury to his ankle by hitting it against a bench in the bakery shop at a time when a worker by the name of Jim Goins was working with him. The statement said in part:

"I did not tell anyone about my hitting my ankle except Jim Goins. When I hit my ankle it did not break the skin and it did not bleed. When I hit my ankle I did not have to sit down or stop work. I did not go see a doctor with my ankle at the time I hurt it, but I did go to the doctor about a year later."

It was stipulated that Jim Goins, the person named in the foregoing quotation, died on April 25, 1946. So if Mr. Starrett hit his ankle during the lifetime of Jim Goins, and worked two years or more thereafter with no injury reported, such fact, along with the other evidence in the record, goes to support the Commission's findings that there was no causal connection between the ankle injury and the death. Although the Commission did not decide the claim on the point of limitations, nevertheless the Commission found as a fact that Mr. Starrett sustained an injury in April, 1946.

Another question was, whether the insurance adjuster had obtained the statement from Mr. Starrett when he was in an irrational condition. The Commission necessarily determined this question from all of the evidence presented; and if the Commission found that Mr. Starrett was rational when he gave this statement, such finding has evidence to support it. Furthermore, Dr. Storm testified that Mr. Starrett had swelling of both ankles and that the swelling in the right ankle was not caused by the ulcer on the left leg. Dr. Storm refused to say that Mr. Starrett's confinement because of the ulcer accelerated the arteriosclerosis and resulting death. Thus the doctor left the inference that the connection

between Mr. Starrett's injury and his death was entirely a matter of speculation.[3]

It is not a question of what we would hold if we were the *de novo* triers of fact. The question before us is, whether the Commission had substantial evidence to support its findings; and a careful study of the record discloses that there was such evidence. Accordingly, the judgment is affirmed.

---

[3] A portion of Dr. Storm's testimony is:

"Q. Let's assume the man does have arteriosclerosis and has an ulcer on his ankle and as a result of the ulcer, he has to be confined to bed. Do you have an opinion as to whether the confinement would aggravate the arteriosclerosis or that as a result of the confinement and the arteriosclerosis, that he would develop some other malady?

"A. I don't see how it could increase his arteriosclerosis except as I have stated before, it might cause some accidental thrombosis of a vessel from the inactivity.

"Q. In other words, the mere confining of a man who had had arteriosclerosis would not necessarily mean anything in itself?

"A. No, sir.

. . . .

"Q. Doctor, there is one thing I would like for you to elaborate on. You mentioned a moment ago that the swelling in the right ankle would not have been due to the other leg but would have been due to a systemic condition. Is nephritis a systemic condition?

"A. Yes, sir."