Moss *v.* El Dorado Drilling Co.

5-3070                                                       371 S. W. 2d 528

Opinion delivered October 21, 1963.

[Rehearing denied Nov. 26, 1963.]

*Brown, Compton & Prewitt,* for appellant.

*Shackleford & Shackleford,* for appellee.

Sam Robinson, Associate Justice. On November 25, 1960, appellant, Jerry Moss, while working as a roughneck (laborer in drilling oil wells) for the El Dorado Drilling Company, received an injury to his back. He was awarded workmen's compensation benefits for loss of time to April 3, 1961. Further compensation was

denied by the Workmen's Compensation Commission on the ground that he had fully recovered from the injury sustained. Moss has appealed contending that he is still disabled. The issue is whether there is substantial evidence to sustain the finding of the Commission. Incidentally, in its opinion the Workmen's Compensation Commission states: ". . . The Full Commission finds that the Referee's Opinion is supported by substantial evidence and should be and is hereby affirmed." We take this occasion to point out that it is the duty of the Commission to make a finding according to a preponderance of the evidence, and not whether there is any substantial evidence to support the finding of the Referee. *Chicago Mill & Lumber Co.* v. *Fulcher*, 221 Ark. 903, 256 S. W. 2d 723; *Stout Construction Co.* v. *Wells*, 214 Ark. 741, 217 S. W. 2d 841.

Appellant is 28 years of age, is married, and has two children. From the evidence it appears that he has been working and making his own living since he was 15 years of age. He worked as a roughneck in the oil fields in 1949. In 1951 he joined the Army and served therein for four years. After his discharge from the Army in 1955, he again went to work in the oil fields and worked as a roughneck until he was injured on November 25, 1960, while working for appellee.

The occupation of roughneck is hard work; it requires heavy lifting, twisting, turning, bending, and climbing oil derricks. On the day he was injured, Moss was working up in a derrick about 55 feet from the ground. Some of the pipe used in connection with the drilling operation was standing upright within the framework of the derrick. A large pulley block struck the side of the derrick causing the pipe to fall. Around his waist appellant had a safety belt which was secured to the derrick by a rope. The pipe fell against this safety rope giving appellant a violent jerk and threw him against the derrick. The safety rope, one end fastened to the derrick and the other to appellant's safety belt, was supporting the heavy pipe. Other roughnecks

climbed the derrick, released appellant, and lowered him to the ground by means of an elevator. The accident occurred about 5:45 a.m. Although suffering pain in his back, appellant stayed on the job on the ground until the end of the shift which ended about 45 minutes later, at 6:30 a.m.

Just as soon as he got home, Moss phoned his employer and told him that he thought he should go to a doctor. The employer referred him to Dr. A. D. Cathey. He went to see the doctor about 7 o'clock a.m. that same morning. Dr. Cathey treated him for several days, but at the end of that time appellant did not feel that he was any better. He then went to see Dr. G. D. Murphy, who treated him until January 11, 1961, at which time Dr. Murphy wrote to the insurance carrier as follows: ''The above captioned individual has failed to respond to treatment given him for back injury. It is my recommendation that he see an orthopedist in Little Rock, Arkansas for consultation and evaluation. I would like to make an appointment for him to see Dr. Elvin Shuffield in Little Rock at an early date.''

Appellant was then referred to Dr. Shuffield in Little Rock. He treated appellant at various times, and finally, on March 27, Dr. Shuffield wrote to Dr. Murphy and among other things stated: ''He [appellant, Moss] was discharged from the Arkansas Baptist Hospital on February 24, 1961, at which time the shape of his spine was found to be good. His muscle spasm was gone, and he had a very good range of motion. I do not think there is any doubt but what this man does have a congenital malformation of the lumbosacral spine. I think he has had a temporary period of total disability because of aggravation of a pre-existing condition. I think that has now improved to where he should be given a trial of work, to see for sure whether or not he is going to have any permanent disability. If you can get close to this man and re-assure him that he is not badly hurt, I think it will go farther toward helping him than anything I know of. He seems to have the utmost confidence in

you, and what you have done for him, but I believe we are going to have a real problem in getting this man back to heavy construction work. I am of the opinion that his back is structurally weak from the congenital malformation, and his back is such that it will be easily injured, and when it is injured it will be slow in making recovery.''

Just three or four days after the date of Dr. Shuffield's letter recommending that appellant ''be given a trial of work to see for sure whether or not he is going to have any permanent disability'', Dr. Murphy ''discharged the patient as cured'' on March 31, 1961. Dr. Shuffield did not say the man had recovered, he merely recommended that Dr. Murphy should endeavor to get him to return to work to see whether his back would stand up to the job.

The insurance carrier cut off the compensation as of April 3, 1961. Moss went back to appellee drilling company for which he was working at the time he received the injury, but appellee company would not put him back to work because the driller considered that he had not recovered sufficiently to do the work of a roughneck.

Since compensation had been stopped and appellant had a wife and two children he had to do something, so he moved in with his brother-in-law in Haynesville, Louisiana, and applied to the Wheelis Drilling Company for a job without mentioning his disability. He was put to work as a roughneck. Later, the Wheelis people said that if they had known about his disability they would not have put him to work. The very first day he worked for Wheelis, and the first time he attempted to lift anything heavy, as he was required to do as a roughneck, his back gave way and he could no longer continue on the job.

At the time of the hearing before the Referee, appellant was again referred to Dr. Shuffield for an examination. Dr. Shuffield reported: ''It is my opinion that.

this man apparently has had a new injury while lifting a muffler on April 29, 1961, while working for Wheelis Drilling Company. At this time I do not find any evidence of any permanent partial disability, and I think this man is capable of doing his work. However, in view of the congenital malformation of the lumbosacral spine, I do not think he should try to do any extremely heavy lifting, because his spine is notorious for being the type that will not hold up under heavy work. I recommend that he contact the Vocational Rehabilitation program, and try to learn some trade where he can make a living without having to do heavy lifting and straining.''

It will be noticed that Dr. Shuffield states his opinion to be that appellant is able to do ''his work''. ''His work'' is that of a roughneck in the oil fields—a job which requires hard manual labor such as the lifting of heavy objects; and yet, Dr. Shuffield also states that he does not think the man should ''do any extremely heavy lifting'' because of the congenital malformation of his lumbosacral spine. It does not appear that the congenital malformation of appellant's spine had disabled him in any manner whatever prior to the time his back was injured while working on the derrick November 25, 1960.

Appellant was 28 years of age at the time he was injured; he had been making his living by hard manual labor since he was 15; he had served four years in the Army, and it is a matter of common knowledge that the training and duties of a soldier are not too easy on the back. Moreover, he had worked as a roughneck in the oil fields regularly for about five years at the time he was injured. There is not a scintilla of evidence that he ever had any trouble with his back prior to the injury. All the evidence is to the contrary.

After appellant received his second injury—the one he received the first day he worked for Wheelis, April 29, 1961—he went to Dr. George Byram of Haynesville, Louisiana. After examining appellant and making X-ray studies of his back, Dr. Byram referred him to ''The

Orthopedic Clinic'' at Shreveport. Dr. Byram reports that in his opinion, appellant has a back injury secondary to a possible premature return to work following the first injury and to a congenital defect in the lumbar spine.

Dr. Carson R. Reed, Jr. of the Orthopedic Clinic reported: ''It is thought that he [appellant] had not recovered from his initial injury when he again aggravated his lumbarsacral region by lifting.'' Dr. Reed further stated that appellant was totally disabled for heavy work at that time, May 25, 1961. In December, 1961, Dr. J. B. Wharton of El Dorado reported that in his opinion the original injury received by appellant in November, 1960, was the greatest cause of the aggravation of the pre-existing deformity of the lumbar spine.

We do not believe that Dr. Murphy's opinion that appellant had made a complete recovery on March 31, 1961, as shown by his report to the insurance company, can be said to be substantial evidence to sustain the finding of the Commission in view of all the other evidence in the case. It will be recalled that Dr. Murphy had referred appellant to Dr. Shuffield, and only three days before Dr. Murphy states that the appellant had fully recovered, Dr. Shuffield had suggested to Dr. Murphy that he endeavor to get appellant to work on a trial basis to see whether he had recovered.

True, at a later date, in July, 1961, Dr. Shuffield gave a statement to the effect that in his opinion appellant was able to do ''his work'', but in the same breath Dr. Shuffield says he should not attempt to do heavy work. The only work appellant knew how to do was heavy work; he had done that kind of work all his life. It *was* ''his work''.

Now as to the applicable law. The fact that appellant has a congenital malformation of the spine—a weak back—is not in itself a valid defense to his claim for compensation, since such condition was aggravated by the injury he received on November 25, 1960, according

to the undisputed testimony, for which injury he was paid four months compensation. *Quality Excelsior Coal Co.* v. *Maestri,* 215 Ark. 501, 221 S. W. 2d 38; *Starrett* v. *Namour,* 219 Ark. 463, 242 S. W. 2d 963; *Bryant Stave and Heading Co.* v. *White,* 227 Ark. 147, 296 S. W. 2d 436; *Hamilton* v. *Kelley-Nelson Const. Co.,* 228 Ark. 612, 309 S. W. 2d 323.

Next we come to the question of whether the disability is to be attributed to the first injury where there was a second injury, as in the case at bar. In *Aluminum Co. of America* v. *Williams,* 232 Ark. 216, 335 S. W. 2d 315, this court quoted with approval from 99 C.J.S. 607, as follows: " 'If the employee suffers a compensable injury and thereafter suffers further disability which is the proximate result of the original injury received, such further disability is compensable. Thus, where an employee suffers a compensable injury and thereafter returns to work and as a result thereof his injury is aggravated and accelerated so that he is further disabled than before, he is entitled to compensation for his entire disability.' " And the court further quoted from Larson on Workmen's Compensation Law, Vol. 1, § 13.00: " 'When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own negligence or misconduct.' " And from 58 Am. Jur. 775: " 'A subsequent incident, or injury, may be of such a character that its consequences are the natural result of the original injury and may thus warrant the granting of compensation therefor as a part of that injury.' "

In 99 C.J.S. 605, it is said under the heading of "Dual Contributing Causes": "To authorize a recovery of compensation, it is not sufficient to show that the injury resulted from one of two causes, but the claimant must show that the proximate cause was one for which the employer would be liable; and as between two accidents, the question whether a disability should be attrib-

uted to the first or second, depends on the circumstances of the case.''

It is firmly established by the great weight of authority that if the second injury is a recurrence of the original injury, compensation therefor must be paid by the employer and insurance carrier at the time of the first injury. See annotation 102 A.L.R. 790, and the many cases cited therein.

In *Quinn* v. *Henry Becker & Son*, 21 A. 2d 617, the court said: ''Where a primary industrial accident causes a fracture which does not unite or results in poor boney union and therefore a weakened condition exists so that a secondary or subsequent event causes the disability to be prolonged, the original accident is responsible for the ultimate resultant condition.''

In *Kennedy* v. *Alaska Industrial Board,* 138 F. Supp. 209, the employee received an injury to his back while working in San Francisco in 1949. Subsequently, he worked for several different concerns. On April 14, 1952, while employed by Sullens & Hoss Timber Company at Rocky Bay, Alaska, the applicant and another man were lifting a part of a planer weighing approximately 400 pounds when applicant felt something snap in his low back. An operation followed with a spinal fusion. There, it was held that disability was due to the injury he received while working for the Koenig Lumber Company in San Francisco three years previously.

There is no question about appellant receiving an injury to his back on November 25, 1960 while working in the due course of his employment as a roughneck for appellee, El Dorado Drilling Company. There is no question about appellee being disabled by reason of such injury to March 31, 1961. There is no question about appellant hurting his back again on April 29, 1961 when he was helping lift a muffler while working for Wheelis. The only question is whether the disability suffered while working for Wheelis was a new injury, or was it an aggravation of the injury he received while working for

appellee, El Dorado Drilling Company. All the circumstantial evidence and the testimony of appellant, along with the testimony of Dr. Byram, Dr. Reed, and Dr. Wharton, tends to prove that the disability of the claimant is due to the first injury. As heretofore pointed out, there is no substantial evidence to the contrary.

The judgment is reversed with directions to the Circuit Court to refer the matter back to the Workmen's Compensation Commission for further proceedings not inconsistent herewith.