## ST. PAUL INSURANCE COMPANY *v.* LIBERTY MUTUAL INSURANCE COMPANY AND JOE E. HERDISON

5-5480                                        464 S. W. 2d 566

Opinion delivered March 22, 1971

*Daily, West, Core & Coffman*, for appellants.

*Shaw & Ledbetter* and *Hardin, Jesson & Dawson*, for appellees.

CARLETON HARRIS, Chief Justice. This case involves the question of which insurance carrier, appellant, St. Paul Insurance Company, or appellee, Liberty Mutual Insurance Company, must ultimately pay workmen's compensation benefits which were awarded appellee claimant Joe E. Herdison. During the years 1968 and 1969, Herdison was employed by Hallett Construction Company, Liberty Mutual Insurance Company, (hereinafter called Liberty) being the compensation carrier through December 31, 1968. On January 1, 1969, St. Paul Insurance Company (hereinafter called St. Paul) became the insurance carrier for Hallett Construction Company. A claim was filed by Herdison, in which he alleged that he had sustained a back injury on November 26, 1968.[1] A hearing was held on August 27, 1969, and the referee ordered that St. Paul be made a party. Another hearing was held on November 4, 1969, at the conclusion of which the referee found that Herdison sustained an accidental injury on November 26, 1968, while Liberty was the insurance carrier, and sustained another accidental injury sometime in February 1969, at which time St. Paul was the insurance carrier; that both accidents contributed to Herdison's condition, and liability was equally apportioned between the two insurance carriers. St. Paul appealed to the full commission, and on March 16, 1970, that tribunal filed its opinion in which it adopted the findings and award of the referee. From this order, St. Paul appealed to the Sebastian County Circuit Court which affirmed the findings of the commission. From the Circuit Court judgment, appellant brings this appeal. For reversal, it is simply asserted that there is no substantial evidence to support the commission's findings, and that said findings do not support the award.

At the first hearing in August, 1969, the referee found that Herdison had suffered an accidental injury on November 26, 1968, at a time when Liberty was the insurance carrier, and that no time was lost in 1968,

[1]Herdison was not aware that his back was injured until his deteriorating condition forced him to see a doctor; originally, he complained only of pain in his feet and legs.

but on April 6, 1969, Herdison underwent an operation; that at this time St. Paul was the insurance carrier. The referee then directed that St. Paul be made a party as a respondent along with the employer and Liberty. Don Mitchell, called on behalf of Herdison, testified that he had instructed claimant to move a dozer in November, 1968, and knew that Herdison, while so engaged, had fallen and been taken to the hospital. There was no mention of any other accident or injury by Mitchell. Bill Logsdon, also called on behalf of Herdison, testified that when claimant was injured in November 1968, he (Logsdon) went to the hospital after the accident and brought Herdison back to Ft. Smith. Likewise, there was no mention of any other accident or injury by Logsdon. The record also reflects that Herdison reported no second accident or injury to his employer, nor to either of the doctors who treated him, and to whom he gave a history. The only evidence offered in support of two injuries came from Herdison himself. In a discovery deposition, Herdison testified that after the accidental injury on November 26, 1968, he returned to work the next day, and worked until he was operated on in April, 1969. He was then asked if during that period of time he received any other injuries. Herdison replied, "Well, at one time I noticed my back hurt me more. I was moving some—you know, my legs and things was bothering me more. I was moving some steel and of course, I was doing some lifting and I noticed it.**** It was my leg more or less, my back didn't hurt me so much it just—I don't know how to explain it, just my legs." The record then reflects the following:

> "Q. Did you have any specific instance when you were lifting something that you felt—
>
> A. Like I say, when I was lifting that steel that time why I noticed it was hurting me more. I was stiff, you know for awhile.
>
> Q. Did you feel any popping in your back or anything like that?
>
> A. No sir, I didn't, no."

When asked when this lifting took place, he answered "It happened somewhere in I'd say in about February". During counsel's summary of the evidence taken by deposition, we find the following:

"Q. Joe, as I understand your testimony then, sometime within say two weeks after this accident [the first accident on November 26] when you fell about ten feet you noticed that your left leg or right leg or right foot started going to sleep?

A. Yes sir.

Q. This would have been well before January 1st, wouldn't it?

A. Yes sir.

Q. That would also have been before you'd done any lifting?

A. Yes sir.

Q. And it just progressively got worse until finally you had to go to the doctor?

A. Yes sir."

Likewise, before the referee, Herdison testified that he moved some steel out of Durant, Oklahoma, and "I did quite a bit of lifting and seemed like it hurt me worse, you know. I got to hurting worse after that." He said that he did not recall the month in which this occurred, and would have to look in his log books to determine the month. The record then reflects, referring to his injury,

"A. Well, it was gradually getting worse, yes sir, up until I moved the steel and seemed like it hurt me worse after I did do the lifting.

Q. Well, after the steel incident would it be say

kind of a snow balling effect? Is that the way it affected you?

A. Well, I don't know whether that did it, or whether time. I just got worse, I know."

However, Herdison again testified that he was having pain and discomfort in January and February of 1969. From the record:

"Q. From the standpoint of the way or as we call it, the symptoms you had, did you have pain and discomfort and so forth in January and February of '69?

A. Yes sir, just shortly right after I had the accident why my foot and things started bothering me.

Q. As you continued to do the work in January and February would it be a fair statement that the day to day activities that you had seemed to make it worse?

A. Yes sir.

Q. Did it seem to aggravate it?

A. Yes sir, I got worse as every day went on."

It is apparent that constant complaint was made by Herdison relative to pain in his foot and legs within two weeks after the first accident, and as previously stated, this was the only injury mentioned to the doctors when they discovered that he actually had a back injury. The quoted testimony makes clear that he was getting worse sometime before the first of the year, and that he had extreme pain and discomfort in the early part of 1969 before the alleged second injury. As to this last, Herdison admitted that he did not know whether the steel lifting incident caused his condition to get worse, "or whether time". It is our opinion that, as a matter of law, the evidence is not substantial that Herdison

specifically received a second injury. Actually, the proof was barely enough to establish even that claimant *could* have sustained a second specific injury. In *Aluminum Co. of America* v. *Williams,* 232 Ark. 216, 335 S. W. 2d 315, this court quoted Larson as follows:

"In Larson's two-volume treatise on 'Workmen's Compensation Law', that writer states the holdings in Vol. 1 § 13.00: 'When the primary injury is shown to have arisen out of and in the course of employment every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own negligence or misconduct'. In 58 Am. Jur. p. 775, 'Workmen's Compensation' § 278, cases from various jurisdictions are cited to sustain the text: 'A subsequent incident, or injury, may be of such a character that its consequences are the natural result of the original injury and may thus warrant the granting of compensation therefor as a part of that injury'."

In accordance with what has been said, it is the order of this court that the judgment of the Sebastian County Circuit Court be, and hereby is, reversed with directions to remand the cause to the Workmen's Compensation Commission for an order consistent with this opinion.