ALUMINUM CO. OF AMERICA *v.* WILLIAMS.

5-2099                                          335 S. W. 2d 315

Opinion delivered May 16, 1960.

[Rehearing denied June 6, 1960]

*Rose, Meek, House, Barron & Nash* by *Phillip Carroll,* for appellant.

*McMath, Leatherman, Woods* and *Youngdahl,* for appellee.

ED. F. McFADDIN, Associate Justice. The appellee, Williams, was employed by appellant, Aluminum Company of America; and we will identify the parties as Williams and Alcoa. This appeal requires a decision on two points: (a) whether there is substantial competent evidence to support the finding of the Workmen's Compensation Commission; and (b) the liability of the employer to compensate an employee for a second injury which arose because of the first injury and without any intervening independent cause.

Chronologically, here are the salient dates:

(a) On April 24, 1957 Thurman S. Williams received a low back injury while employed by Alcoa at its refining plant in Bauxite.

(b) On May 4, 1957 a myelogram was done on Williams, which revealed "a herniated nucleus pulposus at

the 4th interspace on the right''. Dr. Murphy performed surgery for the alleviation of this condition on May 7, 1957. This was the first operation; and as so identified will be mentioned later.

(c)   On June 20, 1957 Williams returned for light work; and Alcoa, after first resisting Williams' claim, finally, under orders of the Circuit Court, paid the expenses of the operation and compensation of 10% permanent partial disability as a whole. A lump sum settlement was made.

(d)   On October 4, 1957 Williams again complained of his back and received some treatment, but later returned to work on November 18, 1957.

(e)   On January 18, 1958 Williams was laid off from work by Alcoa because of reduction in the number of employees; and Williams drew unemployment benefits for some time.

(f)   On November 2, 1958 Williams commenced working as a carpenter for his brother, John Williams, at Dermott, Arkansas, and was engaged in the repair of a filling station and diner which had been damaged by fire. As a part of his duties he nailed light boards (like plywood) on the walls and ceiling of the rooms. He worked at this for several weeks; and several times in November and December 1958 complained of his back hurting him.

(g)   Williams testified that on the night of December 19, 1958, while he was off work and seated in a chair, he tried to arise from the chair and got a ''catch'' in his back which caused him to give up his work.

(h)   On December 20, 1958 Williams signed up for supplemental unemployment benefits at the Alcoa plant.

(i)   On January 2, 1959 Williams went to Dr. Murphy, who had performed the first operation and removed the disk material as previously mentioned in Item (b) *supra*; and Williams told Dr. Murphy of persistent back pains. Dr. Murphy had Williams hospitalized; and on January 6, 1959 Dr. Murphy performed the second operation, which was a removal of additional disk material

at the fourth lumbar interspace and also a spinal fusion of the fourth and fifth lumbar vertebrae.

(j)   On February 3, 1959 Alcoa learned of the second operation and Williams' claim for additional compensation, and promptly resisted, claiming, *inter alia,* that the first injury, operation, and award ended all of Alcoa's responsibility; that the Dermott work was an independent intervening cause for the second operation; and that Alcoa was not liable for the second operation or any additional Workmen's Compensation benefits.

So much for the chronological detail.   The Referee and the Full Commission agreed with Alcoa and denied Williams' 1959 claim.   The Circuit Court reversed the Commission and directed that the compensation be allowed Williams;[1] and Alcoa prosecutes this appeal, claiming that there is substantial evidence to support the finding of the Referee and the Full Commission, which was that the second operation (that of January 6, 1959) was not necessitated by reason of the old injury of 1957 and the first operation, but rather was because of an intervening and independent cause which was an injury received while Williams was working for his brother, John Williams, as a carpenter in Dermott.

---

[1] Here is a portion of the opinion of the Circuit Court: "The Court sees no point in relating history of the injuries and the evidence, but reaches the following findings of fact and conclusions of law:

"1.   The record upon being viewed in the strongest probative light in favor of the findings of the Referee and the Commission does not, in the opinion of this Court, support the finding of the Referee and the Commission.   The Court believes there is a complete absence of testimony upon which to base the findings of the Referee and the Commission in this respect.

"2.   It is noted that in the Referee's statement of the case which the Commission affirmed, the Referee makes the following statement of fact: 'That the injury causing the need of claimant's second operation resulted from his employment by John Williams.'   The Referee and the Commission went further and related that a second operation performed by Dr. Murphy was a result of this additional accident or trauma, basing their finding upon the doctor's testifying that the operation was a success.

"3.   After examining the record with great care, the Court finds no evidence to support the statement that the injury occurred while in the employ of John Williams, or any statement by any medical witness that the claimant was cured by the operation. But, to the contrary, the doctor's testimony was directed wholly to the removal of disc material which should have been removed at the first operation and was not done because of the technical difficulty in removing same.

We recognize the rule to be, that viewing the evidence in its strongest light to sustain the Commission's findings, if there be sufficient evidence to support such factual findings, then the Circuit Court was in error in reversing the Commission. *J. L. Williams & Sons* v. *Smith*, 205 Ark. 604, 170 S. W. 2d 82; *Sturgis Bros.* v. *Mays*, 208 Ark. 1017, 188 S. W. 2d 629; and other cases cited in West's Arkansas Digest "Workmen's Compensation" § 1939. But a careful study of the record fails to reveal any evidence that Williams suffered any trauma or injury while working in Dermott in 1958 sufficient to constitute an independent intervening cause for the 1959 operation. Only four witnesses testified. They were Williams, Dr. Murphy, Doyle Green and Lowell White. Williams testified, as abstracted by appellant:

"I worked for my brother for a period of about five or six weeks down at Dermott, Arkansas. I done mostly painting. I did not do anything that would hurt my back. That's why I worked with my brother, because he knew I had trouble with my back, and I didn't do no heavy work. I sure didn't injure my back in any way while working for my brother. I got up out of a chair when I first noticed it, started to get up out of the chair and that's what started it off. The pain hit my back and it kept getting worse. It's been leaving, you know, in two or three days the pain would leave but it didn't leave that time. So that's when I went on to see Dr. Murphy later and he taken a myelogram. I was in a tourist cabin in Dermott when I got up out of the chair . . .

"The incident that occurred when I arose from a chair was about two days before the job was finished. Prior to that time I had not been having any trouble . . .

". . . I was sitting in the chair and when I started to get up that's when it caught me."

Doyle Green was called by Alcoa. He was the owner of the filling station and diner at Dermott that was being repaired. He had contracted with John Williams to do the repair work, and John Williams had employed

appellee, Thurman S. Williams, to help him. Doyle Green testified that the carpentry work done by Williams was very light work, such as taking down old paneling and putting up new; and taking down the old ceiling squares (16-inch plywood) and putting up new. Green testified (as abstracted by appellant):

"As far as I know Thurman didn't hurt himself or injure himself on the job down there. He didn't quit work because of having hurt his back . . .

"When he made mention about his back hurting him, I gathered that was just a general condition of his back from a previous injury . . .

"I am just sure he didn't hurt himself while he was here. It was more of a recurrence from a previous ailment of some kind he had."

It will be seen that Doyle Green's testimony shows that no trauma or new injury occurred to Williams while he was working in December 1958. Alcoa called Lowell White, who was safety supervisor of Alcoa. He testified as to Williams' complaints in October 1957, and that thereafter Williams refused to "co-operate". None of White's testimony indicated any trauma suffered by Williams or any undue exercise by him except the October 1957 incident.

We come then to the testimony of Dr. Horace R. Murphy, who was the doctor that performed both the operations on Williams; and we are tremendously impressed by Dr. Murphy's absolute candor and frankness. His testimony shows that the second operation was necessitated because of the first operation, and not because of any new trauma or injury. Dr. Murphy testified that when he performed the first operation he removed all of the nucleus pulposus that could be removed with safety from the fourth and fifth interspace, and that he hoped that a fusion operation would not be subsequently required; that, as a usual thing, if all of the nucleus pulposus material was not removed, then within eighteen months or two years the patient frequently had to have another operation and fusion. Dr. Murphy testified that

when Williams came back to him on January 2, 1959 and told him of continuous pains, the doctor knew that a fusion was indicated and that the second operation was the direct result of the first operation and not of any trauma or intervening independent cause between the two operations.[2]

Having reviewed the entire record, we conclude that the Commission was in error in finding, as it did, that the second operation was necessitated by an intervening independent cause. All the evidence shows that the second operation was necessitated by reason of the first operation, and that no intervening independent cause was established.

Having concluded that no independent intervening cause was shown to require Williams' second operation, we examine now to see if Williams is entitled under the law to recover the expenses of the second operation and compensation for additional disability, if any, resulting

---

[2] We copy a few questions and answers found in Dr. Murphy's testimony:

"Q. Well, at least, is it your opinion based on what you actually saw when you went in the second time that his pain was primarily caused by this additional piece of fragment pressing against the nerve root?

"A. I believe so because it was a very definite finding and of course, the fact that he was relieved as far as his hip pain. I mention hip pain because it was quite significant. It's one of the components of sciatica. In other words, the nerve root being pressed upon by the disc material can give you a complete radiation down the leg or it can merely give you hip pain and at that time he was having a rather excruciating hip pain. Following the surgery he actually has been relieved as far as leg symptoms are concerned . . .

"Q. Just one question to more or less sum up. Then it is your testimony that Thurman Williams' condition when you saw him in January, 1959, as a result of which you did the myelogram and subsequent operation, his condition was a result of the extrusion of some bits or particles of the same interspace that had been operated on in April, 1957, by an extrusion of those materials causing his trouble. Now, of course, in his history and in your examination that was not associated with any other particular strain or trauma that you know about?

"A. May I answer it in parts?

"Q. Yes.

"A. The answer of part 1 of your question, it is true this represents a recurrence and the same interspace, the same disc material which unfortunately could not be gotten in the first. Part two of your question, from my history which is turned in the report, was there was no previous history of trauma and that a month before or thereabouts he stated that he started having trouble."

therefrom. In 99 C.J.S. p. 607, "Workmen's Compensation" § 180, the holdings are summarized: "If the employee suffers a compensable injury and thereafter suffers further disability which is the proximate result of the original injury received, such further disability is compensable. Thus, where an employee suffers a compensable injury and thereafter returns to work and as a result thereof his injury is aggravated and accelerated so that he is further disabled than before, he is entitled to compensation for his entire disability".

In Larson's two-volume treatise on "Workmen's Compensation Law", that writer states the holdings in Vol. 1 § 13.00: "When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own negligence or misconduct". In 58 Am. Jur. p. 775, "Workmen's Compensation" § 278, cases from various jurisdictions are cited to sustain the text: "A subsequent incident, or injury, may be of such a character that its consequences are the natural result of the original injury and may thus warrant the granting of compensation therefor as a part of that injury".[3]

There is no evidence of any "independent intervening cause" in this case, so Williams' second operation requiring a spinal fusion was the result of his original injury on April 24, 1957 and his first operation on May 7, 1957. We therefore hold that he is entitled to recover the expenses of the second operation and compensation for additional disability. The parties stipulated in the Circuit Court to these matters; and the Circuit Court judgment showing the stipulation reads as follows:

"It has been stipulated by and between the parties that the claimant's period of temporary total disability ended August 4, 1959, and he reached the maximum heal-

[3] There is an annotation in 7 A.L.R. 1186 entitled: "Workmen's Compensation: Compensation as affected by external infection from, or subsequent incident of, original injury"; and cases are there collected from various jurisdictions. See also annotation on related matters in 102 A.L.R. 790 and 39 A.L.R. 1276.

ing period from the second operation on this date: it is further stipulated that as a result of the spinal fusion performed in the second operation the claimant, Thurman S. Williams, has suffered an additional 10% disability to his body as a whole, for which he should be paid benefits at the rate of $35 per week for a period of 45 weeks, beginning August 4, 1959, said benefits of 45 weeks consisting of the permanent partial disability benefits due the claimant.[4]

In the light of the record and the said stipulation, we conclude that the Circuit Court was correct. The judgment is therefore affirmed, and the cause remanded to the Circuit Court in order that the cause may be remanded to the Commission to see that the Circuit Court judgment is performed.

HOLT, J., dissents.

GEORGE ROSE SMITH, J., not participating.

---

[4] Also in the last paragraph of the judgment of the Circuit Court it was adjudged that Alcoa should pay all hospital, doctors, medical, and drug bills incurred by the said Thurman S. Williams, as a result of the recurrence of the injury to his back; and that Alcoa should pay attorney's fees and costs.