GIBSON'S DISCOUNT CENTER *v.* Lois BORNMANN

5-5843 477 S.W. 2d 171

Opinion delivered March 6, 1972

*Spencer & Spencer,* for appellant.

*Brown, Compton & Prewett,* for appellee.

J. FRED JONES, Justice. This is a workmen's compensation case involving two separate accidents in the course of separate employments, with both accidents resulting in injury to the same area of the spine followed by separate surgical operations following each accident. The real question involved is whether the injured employee's present disability is a .result of the second accident or whether it is a continuation of the disability resulting from the first accidental injury. The referee found that the claimant sustained a new injury as a result of her second accident and has suffered a permanent partial disability in the amount of 25% to the body as a whole. He awarded compensation on that basis. The full Commission reached the same conclusion on review, and the Commission's award was affirmed by the Union County Circuit Court on appeal. The respondent-employer has appealed to this court and relies on the following points for reversal:

"The finding of a new injury as opposed to an aggravation of a pre-existing injury is not supported by substantial evidence.

Assuming, but not admitting, that there was a new injury, an award of twenty-five (25%) per cent per-

manent partial disability benefits is not supported by substantial evidence."

The facts in the record appear as follows: The claimant-appellee, Mrs. Lois Bormann, sustained an injury to her back on March 30, 1965, when she lifted a heavy object while employed as a clerk by the Franklin Stores Corporation. Following a period of conservative treatment for this injury, Mrs. Bornmann underwent surgery for removal of the 4th and 5th lumbar discs in her spine. After her healing period ended Mrs. Bornmann filed a claim with the Commission for permanent and total disability, but before the claim was heard by the Commission she and the respondents in that case entered into a joint petition for final settlement of the claim under the provisions of Ark. Stat. Ann. § 81-1319 (1) (Repl. 1960). The joint petition set out that the claimant was contending for permanent total disability; that the medical evaluations ranged from 10% to 25% partial disability to the body as a whole; that the petitioners had agreed on the sum of $5,013 in final settlement on joint petition, and that this sum amounted to more than the highest estimate of permanent partial disability made by any of the doctors. The joint petition was approved on July 7, 1966, and the claimant was paid thereunder.

Following her settlement on joint petition, Mrs. Bornmann returned to work for Franklin Stores in December, 1967, and worked two weeks before Christmas. She testified that during the two weeks in December, 1967, she did the same work as a clerk at the Franklin Stores as she did prior to her original injury; that in December, 1967, she felt that she was in fine physical condition and had made application for full time employment with the Sterling Department Stores, as well as other stores, and had applied for full time employment again at Franklin.

Mrs. Bornmann was employed by the respondent, Gibson's Discount Center, on January 28, 1968, as an

assistant in taking inventory and on that date she tripped over some rope and fell, injuring her neck, knees and back. Mrs. Bornmann testified that she continued to improve following her injury from the 1965 accident; that she was able to work around the house and mow the lawn without difficulty; that since her last injury and additional surgery she is unable to squat down and has difficulty getting in and out of the bathtub; that her knees will not work; that she has severe headaches and that it is necessary to wear a back brace in order to get around at all.

On July 17, 1968, Dr. E. R. Hartmann, who performed the previous operation, performed additional surgery on Mrs. Bornmann's back for laminectomy at the L-4 L-5 intervertebral disc space with removal of residual 4th lumbar disc. Spinal fusion was done at L-4 L-5 and S-1. Dr. Hartmann reported:

"The patient was found to have a small bulging disc in this area; this was removed by curettage and rongenning [sic] through a hole in the postero-longitudinal ligament. Attention was then directed to the fifth interspace where the procedure was repeated. This space showed residual scarring from the previous surgery."

Dr. Hartmann testified that when he examined Mrs. Bornmann on January 28, 1968, he was not sure that she had aggravated her back condition, but that when he re-examined her on January 31, he felt that she had aggravated her previous back injury. He testified that in a disc operation some of the disc material ranging up to 20% of it, is left in the disc space because it is impractical to try to remove all of it through one incision and the remaining disc material fuses to some extent with scar tissue forming a fibrocartilage following a disc operation. He testified that following a disc operation such as the first one he performed on Mrs. Bornmann, the operation site is more susceptible to further injury and that he was of the opinion that Mrs. Bornmann suffered an aggravation of the previous condition at the same opera-

tive site. He says that on the first operation he removed material at both the 4th and 5th disc spaces on the left side, and that on the second operation he removed bulging material from the same disc spaces on the right side. He testified that around 20% of the disc material is left following an operation; that after the area completely heals there is really more than 20% of material in the disc space caused by scarring. He testified that it is difficult to determine what disability might result from a particular incident without a pre-existing underlying injury or condition, but that in Mrs. Bornmann's case she did receive a reinjury to the site of the previous operation. On cross-examination Dr. Hartmann testified that following Mrs. Bornmann's surgery as a result of her first injury, he estimated her permanent partial disability as 10% to the body as a whole, and that following her second injury and subsequent surgery he estimated her permanent partial disability as 25% to the body as a whole.

The thrust of the appellant's argument under its first point is that Mrs. Bornmann's surgery and disability following her fall while working at Gibson's were simply continued results of her injury she sustained in 1965 while employed by Franklin Stores. The appellant argues that Mrs. Bornmann's claim against Gibson's was without merit since the entire consequences of her first injury were properly and legally chargeable to her former employer, Franklin Stores, and that her contention in her joint petition for settlement following that accidental injury was completely consistent with the fact that her present condition is the result of the original injury. The appellant relies on our decision in *Moss* v. *El Dorado Drilling Co.*, 237 Ark. 80, 371 S. W. 2d 528, in support of this contention, but the appellee properly distinguishes the *Moss* case on its facts from the case at bar. In the *Moss* case the claimant was an oil field worker engaged in heavy work and was under the medical care of a general practitioner following a back injury. He was referred to an orthopedic specialist who examined him and referred him back to the attending physician with the recommendation that he be permitted to return to work on a trial basis in order to determine whether

he would have any permanent disability. The attending physician immediately dismissed the claimant as completely recovered and the first day he attempted to work following his dismissal by the attending physician, his back gave way under the stress of his work.

There is no question that Mrs. Bornmann suffered an accidental injury when she tripped over rope and fell while employed by Gibson's and there is no question that she injured her knees, neck and back in that fall. Whether the injury to her back in that fall was to an area previously injured or weakened by previous injury is of little importance. The real question is whether her medical treatment, surgery and disability following the second injury were the result of the first or second injury. From the medical reports and testimony of Dr. Hartmann, Mrs. Bornmann complained of left leg pain following her first injury and of right leg pain following the second injury. Bulging discs were found and removed from the left side following the first injury and they were found and removed from the right side following the second injury. We conclude that there was substantial evidence supporting the Commission's finding that Mrs. Bornmann's medical treatment, surgery and disability following her second injury were a result of the second injury.

As to appellant's second point, the difficulty in this case, as in most cases of *permanent partial* disability to the body as a whole, lies in the difficult task of measuring the disability by the inability to earn wages and attempting to project the nebulous results into the unclear future. This case falls within the provisions of Ark. Stat. Ann. § 81-1313 (f) (2) ii (Supp. 1969) which provides as follows:

"(f) Second injury: In cases of permanent disability arising from a subsequent accident, where a permanent disability existed prior thereto:

* * *

(2) If an employee has a prior permanent disability not occasioned by an injury resulting while in the employ of the same employer in whose employ he received a subsequent permanent injury, the amount of compensation for the subsequent injury shall be fixed as follows:

\* \* \*

ii. If the subsequent injury is one that is not scheduled under section 13 (c) [subsection (c) of this section], the injured employee shall be paid compensation for the healing period and for the degree of disability that would have resulted from the subsequent injur᾽ if the previous disability had not existed."

The referee's opinion which was adopted by the full Commission contains the following language:

"Claimant testified that she is 52 years of age, has a ninth grade education, has been a saleslady for 20 years. Claimant states further since her last operation in July, 1968, she has had very bad nerves and can't do any type of work around the home.

T. W. Bornmann, husband of the claimant, also testified his wife was very nervous and was unable to do anything around the house.

\* \* \*

Claimant has a permanent partial disability of no greater than 25 per cent to the body as a whole.

March 30, 1965, claimant sustained a back injury, which resulted in back surgery in the very same area of the back as herein involved. Claimant was given in the area of 10 per cent impairment rating to the body as a whole as a result of this injury. The matter was concluded by Joint Petition on July 7, 1966, and settlement made by payment of $5,735.45 which included $722.45 for the attorney of the claimant and this Joint Petition, made a part of this record, al-

leges total disability as the basis for the Joint Petition of July 7, 1966."

The medical reports and testimony relating to both injuries ranged in estimates of permanent partial disability from 10% to 25% of the body as a whole and after reviewing the medical reports the referee continued:

"The medical impairment of the doctors, of course, is only one means of determining the degree of disability. On basis of the testimony presented, lay and medical, there appears to be no sound reason why claimant cannot return to the duties of a saleslady within a reasonable time for convalescence.

The testimony reveals that following her surgery of 1965, claimant was given an impairment rating, alleged permanent partial disability by means of a Joint Petition, and after consummation of settlement was able to resume her duties as a saleslady.

* * * It appears to this Referee that within a reasonable time for convalescence claimant should again be motivated to return to the duties of a saleslady. The medical impairment, from close review of all medical evidence, reveals to this Referee that the degree of impairment of 25 per cent to the body as a whole is quite ample for a disability rating as a result of this injury and resulting surgery.

*    *    *

Also on the question of this second injury in relation to the first injury in regard to credit, the Referee finds this case, under the previously stated findings, comes under the provisions of Section 81-1313 (f) (2) ii which provides that in cases of permanent disability arising from a subsequent accident, where a permanent disability existed prior thereto, if the subsequent injury is one that is not scheduled under the section the injured employee shall be paid compensation for the healing period and for the degree

of disability that would have resulted from the subsequent injury if the previous disability had not existed.

\* \* \*

The respondent will pay to the claimant $38.50 per week beginning on January 29, 1968, and continuing until March 19, 1969. Beginning on March 20, 1969, respondent will pay claimant $38.50 per week forward for 112½ weeks which represent 25 per cent permanent partial disability and all payments accrued shall be paid in one lump sum."

Mrs. Bornmann and her husband were the only ones who testified as to what Mrs. Bornmann can and cannot do since her last injury. A recitation of their testimony is not necessary to the disposition we make of this case.

The provisions of the statute, § 81-1313, *supra*, are clear and we add nothing to our interpretation as set out in *Davis* v. *Stern-Rogers Construction Co.*, 248 Ark. 344, 451 S. W. 2d 469. Dr. Hartmann performed the surgery following both injuries in this case and the referee apparently resolved the doubts in favor of the claimant as was his duty under the statute, and found that permanent partial disability following the appellee's first injury was rated at the lowest estimate made by Dr. Hartmann in the amount of 10%, and that following her second injury she suffered the highest degree of permanent disability also estimated by Dr. Hartmann as well as other physicians as 25%. We find that there is substantial evidence to sustain the referee's findings on both disabilities.

The referee's opinion indicates that he did not overlook the second injury statute, *supra*, but it is apparent that he based his findings as to disability on the medical evidence and found no evidence, or found insufficient evidence, to base any of the award on loss in earning capacity over and above the medical disability rating. Consequently, the record is not clear as to how the Com-

mission arrived at a 25% permanent partial disability under the referee's finding in the light of § 81-1313 ii, *supra*.

If Mrs. Bornmann did have a 10% permanent partial disability following her first injury, and as a result of it, and if she does have a 25% permanent partial disability following her second injury, it logically follows that under the statute she should be paid compensation for the degree of disability that would have resulted from the second injury if the previous disability had not existed. Apparently the employer and compensation insurance carrier in the first injury recognized as much as a 10% permanent partial disability as a result of that injury but Mrs. Bornmann contended that her disability was total and permanent. The medical estimates ranged from 10% to 25% and the matter was disposed of by joint petition and the percentage of disability was not determined. Although the referee and the Commission found that Mrs. Bornmann was *rated* as 10% permanently disabled following the first injury, the opinion does not say what her permanent partial disability actually was following her first injury.

The judgment is reversed and this cause is remanded to the circuit court with instructions to remand to the Commission for a determination of the degree of disability, if any, suffered by Mrs. Bornmann as a result of her first injury, and for the degree of disability, if any, that would have resulted from her subsequent injury if the previous disability, if any, had not existed.

Reversed and remanded.