Moise Joseph GUIDRY, Jr. *v.*
J & R EADS CONSTRUCTION CO.
and USF&G INSURANCE CO.

CA 83-221                                    669 S.W.2d 483

Court of Appeals of Arkansas
En Banc
Opinion delivered May 16, 1984

*James S. Hudson, Jr.,* for appellant.

*Shackleford, Shackleford & Phillips, P.A.,* for appellees.

MELVIN MAYFIELD, Chief Judge. This is an appeal from the Workers' Compensation Commission. The appellant was injured in May of 1980 while working for J & R Eads Construction Company. This resulted in surgery for the removal of a ruptured disc in June of 1980, and appellant was subsequently given a permanent partial disability rating of 10% to the body as a whole and released to return to work on January 5, 1981.

The appellant was paid the benefits required by the 10% disability, but he now contends that this rating is insufficient, that his healing period did not end in January of 1981, that he should be allowed a retroactive change in physicians so that a doctor who has treated him will be paid by appellant's employer, and that he is entitled to future medical treatment. A hearing was held on these contentions and they were denied. The full Commission affirmed.

At the hearing before the administrative law judge the appellant testified that he returned to work for the appellee employer in January of 1981, but after working a few days fell off a ladder because his legs "just gave out." The doctor who performed his original surgery had recommended that he go back to work and appellant was not satisfied with this recommendation so he went to see another doctor. The new doctor hospitalized appellant and on May 6, 1981, performed surgery. He reported to appellant's attorney that a "huge extruded fragment of disc" was removed, apparently from the same disc space operated on by the first doctor. The second doctor estimated a disability of 20% to the body as a whole and another doctor, seen by appellant after this last surgery, estimated his disability at 30%.

At the hearing before the administrative law judge, the appellant admitted that he was involved in an automobile accident in November of 1980. He also admitted that suit was filed against the employer of the driver of the other vehicle for injuries alleged to have been received in that collision by appellant and his wife and daughter who were in the

automobile with him. The complaint specifically alleged that appellant "suffered pain and injuries, including acute lumbar strain and acute aggravation of previous lumbo-sacral disc disease."

In answers to interrogatories served on him in the tort case, the appellant stated under oath that the injury sustained in the automobile collision aggravated the previous back injury and further surgery was required; that the surgery was performed in the Baptist Memorial Hospital in Little Rock; that as a result of the accident he had been treated by three different doctors; and that he had lost wages at the rate of $5.00 per hour for forty (40) hours each week since the accident. He also admitted that the tort suit was settled but said his wife and daughter received all the proceeds of the settlement and he got nothing.

In denying additional benefits, the Commission said:

[I]t is apparent that claimant's second injury was not as a result of the May 29, 1980 injury but was as a result of either the automobile accident of November 7, 1980, or the fall from the ladder in January of 1981. In short, obviously, there was a new event that occurred that aggravated claimant's prior injury, and it is axiomatic that aggravations of preexisting injuries are considered, in effect, new injuries and not recurrences of the original injury.

The above statement is then followed by this unfortunate statement:

In summary, the Workers' Compensation Commission will not award benefits to a claimant who has previously given sworn statements in a pending lawsuit that his physical difficulties relate to a non-job-related automobile accident when he later changes his mind and decides to file a workers' compensation claim for additional benefits.

It is, of course, the duty of the Commission to pass upon the credibility of the parties and witnesses who give evidence

before it. It is not, however, the Commission's prerogative to refuse compensation to a claimant simply because he is untruthful. But even when we regard the statement in the most favorable light, we think this matter should be remanded because the statement also contains the language "it is axiomatic that aggravations of preexisting injuries are considered, in effect, new injuries and not recurrences of the original injury." While the language may be correct in an appropriate situation, we are troubled by it in view of the appellant's argument in this case.

The appellant cites *Moss* v. *El Dorado Drilling Co.,* 237 Ark. 80, 371 S.W.2d 528 (1963), and builds his argument around the following quotation that case makes from 1 Larson, *Workmen's Compensation Law,* § 13.00.

> When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own negligence or misconduct.

Appellant's brief contains the flat assertion, "There can be no independent intervening cause unless the claimant was negligent or reckless in causing a subsequent injury." We think appellant has misread Larson and *Moss* v. *El Dorado Drilling.* In this case, appellant's fall from the ladder was in the course of his employment by the appellee construction company, so the only independent intervening cause possible is the automobile accident. It did not, however, have to be caused by appellant' negligence or recklessness in order to be an independent intervening cause.

This is made clear in 1 Larson, *Workmen's Compensation Law* § 13.11 at 3-353 (1982), where it is said:

> The issue in all of these cases is exclusively the medical issue of causal connection between the primary injury and the subsequent medical complications. By the same token, denials of compensation in this category have invariably been the result of a

conclusion that the requisite medical causal connection did not exist.

Cases cited in the 1983 Supplement to section 13.11 of Larson's treatise also make it clear that the question is whether there is a causal connection between the primary injury and the subsequent disability and if there is such a connection, there is no independent intervening cause unless the subsequent disability is triggered by activity on the part of the claimant which is unreasonable under the circumstances. *Medart Div. of Jackes-Evans Mfg.* v. *Adams,* 344 So.2d 141 (Miss. 1977). *See also Richardson* v. *Robbins Lumber, Inc.,* 379 A.2d 380 (Me. 1977); *Schaefer* v. *Williamston Community Schools,* 323 N.W.2d 577 (Mich. App. 1982), and 1 Larson, *Workmen's Compensation Law* § 13.12 at 3-375 through 3-379 (1982). We think the point is plainly stated in this summary in the *Schaefer* case:

> In light of our discussion of Larson and our interpretation of *Adkins,* in our view, where the primary compensable injury arises out of and in the course of employment compensability may be extended to a subsequent injury or aggravation of the primary injury where it has been established that the subsequent injury or aggravation is the direct and natural result of the primary injury and the claimant's own conduct has not acted as an independent intervening cause of the subsequent injury or aggravation.

The Arkansas cases also make this matter plain. The *Moss* v. *El Dorado Drilling* case, relied upon by appellant, quotes from the Arkansas case of *Aluminum Co. of America* v. *Williams,* 232 Ark. 216, 335 S.W.2d 315 (1960). In that case the Commission had found that a second surgical procedure was necessary because of an independent intervening cause. The court reversed that finding for lack of substantial evidence but made no reference to any requirement of negligence or fault on the claimant's part. In *Gibson's Discount Center* v. *Bornmann,* 252 Ark. 24, 477 S.W.2d 171 (1972), the appellant relied upon *Moss* v. *El Dorado Drilling* to support its contention that the claimant's condition was the result of her original injury. The court, however,

affirmed the Commission's finding that her condition was the result of a second injury. Again, no discussion and no mention of the second injury being caused by the claimant's fault or negligence. We therefore conclude - contrary to the appellant's contention - not only can there be an independent intervening cause without negligence or recklessness on the claimant's part, but unreasonable conduct on a claimant's part may create an independent intervening cause which would otherwise not exist.

As we have pointed out, compensation cannot be denied to a claimant simply because he is untruthful. Moreover, as we have indicated, in view of the appellant's contention that there is no independent intervening cause in this case, we are not sure that the Commission's findings really met the issue presented. For these reasons this matter is reversed and remanded for reconsideration in keeping with this opinion.

Remanded.

CLONINGER and GLAZE, JJ., dissent.

LAWSON CLONINGER, Judge, dissenting. I respectfully dissent from the majority decision in this case. *Moss v. El Dorado Drilling Co.*, 237 Ark. 80, 371 S.W.2d 528 (1963), citing from 1 Larson, *Workmen's Compensation Law*, § 13.00, specifically states:

> When the primary injury is shown to have arisen out of and in the course of an employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause *attributable to claimant's own negligence or misconduct.* (Emphasis added)

From a reading of this rule, it is my opinion that an independent intervening cause can only defeat a claim which is otherwise compensable if it is caused by the claimant's own negligence or misconduct. This rule still requires that in order to be compensable, it must be a "natural consequence that flows from the injury."

In *Aluminum Co. of America* v. *Williams*, 232 Ark. 216, 335 S.W.2d 315 (1960), the Arkansas Supreme Court again cited the rule stated above from Larson's treatise. The majority opinion emphasizes the fact that although the court reversed a finding by the Circuit Court that a second surgical procedure was made necessary because of an independent intervening cause, the opinion made no reference to any requirement of negligence or fault on the claimant's part. However, the court did cite the rule from Larson's treatise which, in its fact, seems clear. Further, it is intereting to note that in that opinion, the Supreme Court cited testimony of the claimant that the incident occurred when he arose from a chair at his home. The court also made note of the fact that the claimant had been doing some painting during the week in question but that he had not done anything that would have hurt his back.

For the above stated reasons, I would reverse the finding of the Commission that claimant's injury was not compensable. The claimant in this case was not engaged in any activity which could be considered negligence or misconduct, and the evidence clearly indicates that the subsequent episode "flowed from the original injury."

TOM GLAZE, Judge, dissenting. The Commission found appellant's second surgery was not a result of the May 29, 1980, injury, but was a result of either the automobile accident of November 7, 1980, or the fall from a ladder in January of 1981. Such a finding was clearly supported by substantial evidence, particularly that medical evidence showing appellant's condition that required the second surgery was caused by the vehicular accident. The majority does not actually deny that such substantial evidence exists, but it remands the case because it infers from one of the Commission's statements that the Commission actually refused compensation to the appellant because he was untruthful. I do not agree with the majority's interpretation of what the Commission found and held. Appellant's credibility was an issue, and in view of all the evidence, the Commission simply did not believe or accept the appellant's arguments concerning the effect of his automobile accident. Credibility is always a matter lying exclusively within the

province of the Commission. Here, the Commission resolved that credibility issue against appellant; merely because the Commission found that the appellant lacked credibility is no reason to remand this matter for further proceedings. Because substantial evidence supports the Commission's denial of benefits, our remanding this matter will unnecessarily prolong this cause, and will in no way change the result. I would affirm.