Randy DAVIS *v.*
OLD DOMINION FREIGHT LINE, INC.

CA 99-26 13 S.W.3d 171

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered January 26, 2000
[Petition for rehearing denied March 1, 2000.* ]

---

* BIRD and GRIFFEN, JJ., would grant.

*Steven R. McNeely,* for appellant.

*Kilpatrick, Aud & Williams, L.L.P.,* by: *Michael E. Aud,* for appellee.

A NDREE LAYTON ROAF, Judge. Randy Davis appeals an order from the Workers' Compensation Commission denying him additional temporary total disability and medical benefits based on a finding that his current period of disability was the result of a noncompensable, independent intervening cause. On appeal, Davis argues that the Commission's order is not supported by substantial evidence and is erroneous as a matter of law. We agree that the Commission erred as a matter of law, and we reverse and remand.

Davis sustained an admittedly compensable right-ankle injury on April 4, 1996, while working as a truck driver for Old Dominion Freight Lines (Old Dominion). On September 11, 1996, Dr. Jay Lipke performed a surgical repair of a partial dislocation of the peroneal tendons. Davis subsequently was diagnosed with a blood clot that required a period of hospitalization and anticoagulant medication. However, Dr. Lipke's notes of November 1, 1996,

reflected that Davis's wound was well-healed, that he demonstrated good range of motion in his ankle, that there was no evidence of subluxation of the tendon, and that it was anticipated that he would be released to return to work when his blood-clot condition stabilized.

According to Davis, on November 13, 1996, while trying to avoid stepping on his two-year-old niece, he stepped awkwardly on his ankle and heard a loud pop. Davis presented to Dr. Lipke, who initially treated this injury as a sprain, but his notes of December 2, 1996, and December 9, 1996, indicate that the incident, although minor, disrupted the surgical repair because the healing process was incomplete.

Davis sought additional workers' compensation benefits for his ankle complaints, which were controverted by Old Dominion. After a hearing, an administrative law judge (ALJ) found that the November 13, 1996, injury constituted an independent intervening cause, and therefore Davis failed to prove his entitlement to additional benefits. On a divided vote, with "majority," concurring, and dissenting opinions, the Commission affirmed and adopted the ALJ's findings.[1]

We first consider Davis's argument that the Commission's opinion is erroneous as a matter of law in that it applied the wrong legal standard. Davis acknowledges that our current workers' compensation law codified at Ark. Code Ann. § 11-9-102(5)(F)(iii) (Supp.1997) provides that a disability caused or prolonged by a nonwork-related independent intervening cause shall be noncompensable, but argues that this section simply codified then-existing case law. He further asserts that this court's recent decisions in *Oak Grove Lumber Co. v. Highfill*, 62 Ark. App. 42, 968 S.W.2d 637 (1998), and *Georgia-Pacific Corp. v. Carter*, 62 Ark. App. 162, 969 S.W.2d 677 (1998), indicate that the new act has not changed the relevant analysis of independent-intervening-cause cases. Davis claims that the ALJ's conclusion that the November 13, 1996, incident was an independent intervening cause is erroneous because

---

[1] Although Davis does not specifically make this point in his statutory-construction argument, we note that the ALJ's opinion, which was adopted by the Commission, contains a clearly incorrect interpretation of Ark. Code Ann. § 11-9-102(5)(F)(iii). According to the opinion, that section *requires* a finding of independent intervening cause "when a subsequent incident 'causes or prolongs disability or a need for treatment.' "

he applied a simple "but for" causation test. He asserts that the ALJ's reasoning, which was adopted by the Commission, was flawed because if it were the law it would render noncompensable any work-related disability that is prolonged by nonwork-related intervening causes. Davis contends that this interpretation was rejected by this court in *Oak Grove Lumber Co. v. Highfill, supra,* and *Georgia-Pacific Corp. v. Carter, supra,* and asserts that Act 796 was not intended to relieve employers of responsibility when "minor trauma" disrupts a healing process. This argument has merit.

 We are not unmindful of the legislative declaration of Act 796, "all prior opinions or decisions of any administrative law judge, the Workers' Compensation Commission, or courts of this state contrary to or in conflict with any provision in this act" are nullified (Ark. Code Ann. § 11-9-1001 (Repl. 1996)), and that Ark. Code Ann. § 11-9-102(5)(F)(iii) was not found in Arkansas's prior workers' compensation statute. However, we agree with Davis that this section is not a blanket legislative repeal of our prior decisions on this subject. Accordingly, the case law regarding independent intervening causes also remains in force for new act cases. *See Lawhon Farm Servs. v. Brown,* 335 Ark. 272, 984 S.W.2d 1 (1998).

Arkansas Code Annotated § 11-9-102(5)(F)(iii) provides:

> Under this subdivision (4)(F), benefits shall not be payable for a condition which results from a nonwork-related independent intervening cause following a compensable injury which causes or prolongs disability or a need for treatment. *A nonwork-related independent intervening cause does not require negligence or recklessness on the part of a claimant.*

(Emphasis supplied.) The Commission adopted the ALJ's opinion that, in discussing this section, stated "Act 796 no longer requires negligence or recklessness on the part of a claimant for a finding of independent intervening cause." However, in *Guidry v. J & R Eads Const. Co.,* 11 Ark. App. 219, 223, 669 S.W.2d 483, 485 (1984), citing favorably to Larsen's treatise on workers' compensation law, this court determined that the overriding issue in cases involving subsequent injury or disability is "whether there is a *causal connection* between the primary injury and the subsequent disability," and only if such a connection exists does the question of the claimant's conduct need to be addressed. (Emphasis added.) We concluded that in such circumstances "not only can there be an independent

intervening cause without negligence or recklessness on the claim-ant's part, but unreasonable conduct on a claimant's part may create an independent intervening cause which would otherwise not exist." *Id.* at 224, 669 S.W.2d at 486. Consequently, because negli-gence or recklessness on the part of a claimant was not required for a finding of independent intervening cause under our prior law, the Commission's reasoning was flawed, or it was based on an incorrect premise.

■ Moreover, while we find Davis's reliance on *Oak Grove Lumber Co. v. Highfill, supra,* to be misplaced because in that opinion this court declined to consider the appellant's argument regarding the interpretation of Ark. Code Ann. § 11-9-102(5)(F)(iii), we agree that our decision in *Georgia-Pacific Corp. v. Carter, supra,* set forth the correct legal standard. In *Carter,* we held that if there is a causal connection between the primary injury and subsequent complica-tion or disability, an activity of the claimant that triggers the subse-quent complications must be "unreasonable under the circum-stances," in order to be an independent intervening cause. *Id. (citing Guidry v. J & R Eads Constr. Co.,* 11 Ark. App. 219, 669 S.W.2d 483 (1984)).

■ In the instant case, the Commission did not address the issue of causal connection and did not find that Davis's effort to avoid stepping on his two-year-old niece was unreasonable under the circumstances, but merely found that the incident at his sister's house necessitated the additional medical treatment and surgery and for that reason alone was an independent intervening cause. Cer-tainly, where Davis was cleared by his doctors to walk around, avoiding stepping on and possibly injuring a young child could be found to be entirely reasonable. Because the Commission's analysis was erroneous as a matter of law, we reverse for fact-finding in accordance with the standard set forth in *Georgia-Pacific Corp. v. Carter, supra,* and *Guidry v. J & R Eads Constr. Co., supra,* that is, whether the requisite causal connection exists, and whether or not the disruption of the healing process of Davis's primary injury was caused by conduct that was unreasonable under the circumstances.

Reversed and remanded.

PITTMAN and HART, JJ., agree,

HAYS, S.J., concurs.

BIRD and GRIFFEN, JJ., dissent.

WENDELL L. GRIFFEN, Judge, dissenting. In reversing the Workers' Compensation Commission's decision that denied the claim for additional benefits asserted by Randy Davis, the majority has blatantly read Ark. Code Ann. § 11-9-102(5)(F)(iii) out of our workers' compensation law. The statute reads as follows:

> Under this subdivision (5)(F), benefits shall not be payable for a condition which results from a nonwork-related independent intervening cause following a compensable injury which causes or prolongs disability or a need for treatment. A nonwork-related independent intervening cause does not require negligence or recklessness on the part of a claimant.

Unlike the majority, I believe this statute — added to our workers' compensation law by Act 796 of 1993 — dictates a decision affirming the Commission. I do not understand how the majority concludes that this statute was not a deliberate departure from the workers' compensation law that predated Act 796. I also do not understand how today's decision squares with the plain and unambiguous declaration by the Arkansas General Assembly that its "specific intent" in enacting Act 796 was to "repeal, annul, and hold for naught *all* prior opinions or decisions of any administrative law judge, the Workers' Compensation Commission, or courts of this State contrary to or in conflict with *any provision in this act.*" *See* Ark. Code Ann. § 11-9-1001 (Repl. 1996) (emphasis added). Therefore, I must respectfully dissent.

It is beyond question that, when he stepped awkwardly on November 13, 1996, and heard a loud pop while trying to avoid stepping on his two-year-old niece, Randy Davis was not engaged in conduct related to his work as a truck driver for Old Dominion Freight Lines. It is also undisputed that Dr. Jay Lipke had performed a surgical repair of a prior work-related ankle injury on September 11, 1996, and that Davis had experienced a satisfactory, albeit incomplete, healing process following that surgery before the November 13, 1996 incident occurred. And the record plainly shows that the November 13, 1996 incident disrupted the surgical repair so that another surgical repair was required and the healing process was prolonged. The majority cannot dispute these facts. Nor can the majority dispute or deny that Ark. Code Ann. § 11-9-

102(5)(F)(iii) is controlling on this claim; after all, both the original work-related ankle injury on April 4, 1996, and the November 13, 1996 episode occurred after July 1, 1993, the date when Act 796 took effect.

In light of this clear proof and the plain statutory language, Old Dominion should not be obligated to pay for the second surgery or pay temporary disability benefits associated with the November 13, 1996 incident and its consequences. After all, Dr. Lipke declared that the November 13, 1996 incident was an aggravation of the incompletely healed surgical repair. Old Dominion did not cause that aggravation. We are confronted with plain, unambiguous, and controlling statutory language stating that benefits shall not be payable for a condition that results from a nonwork-related independent intervening cause following a compensable injury that causes or prolongs disability or a need for treatment and that a nonwork-related independent cause does not require negligence or recklessness on the part of the claimant. So we should be affirming the Commission and holding that Old Dominion is not obligated to finance the medical and disability costs associated with the November 13, 1996 event.

However, the majority has concluded that the duly elected representatives of the people of Arkansas in the Seventy-Ninth General Assembly meant nothing by enacting Ark. Code Ann. § 11-9-102(5)(F)(iii). The majority cannot deny that the General Assembly expressly declared its intent that "all prior opinions or decisions of any administrative law judge, the Worker's Compensation Commission, or courts of this State contrary to or in conflict with any provision in this act [Act 796 of 1993]" be nullified. The majority must admit that Ark. Code Ann. § 11-9-102(5)(F)(iii) became part of Arkansas workers' compensation law when Act 796 was enacted and took effect July 1, 1993. Nevertheless, the majority bottoms its decision on our court's decision in *Guidry v. J & R Eads Const. Co.*, 11 Ark. App. 219, 669 S.W.2d 483 (1984), a case decided twelve years before Act 796 was enacted with a holding that plainly contradicts the statute now before us. In doing so, the majority quotes from *Guidry* and concludes that "because negligence or recklessness on the part of a claimant was not required for a finding of independent intervening cause under our prior law the Commission's reasoning [in denying the present claim] was flawed, or it was based on an incorrect premise."

I confess that as author of our opinion in *Georgia-Pacific Corp. v. Carter*, 62 Ark. App. 162, 969 S.W.2d 677 (1998), I cited *Guidry* and the principle that if there is a causal connection between the primary and the subsequent disability, there is no independent intervening cause unless the subsequent disability is triggered by activity on the part of the claimant which is unreasonable under the circumstances. *Carter* involved a claim for additional compensation benefits by a man who suffered a work-related injury to his left knee in September 1994, received conservative treatment for that problem, and who experienced a worsening of his left knee problem in April 1995 while undergoing a treadmill stress test for an nonwork-related heart problem. The Commission found that the worker had proved by a preponderance of the evidence that his knee injury was causally related to his employment and that he was entitled to temporary total disability benefits. We affirmed that decision, holding that the Commission's decision — which hinged largely on its assessment of the claimant's credibility — was supported by substantial evidence. Then, turning to the employer's alternative ground for reversal that the employee's disability resulted from an independent intervening cause, we affirmed the Commission by noting that the Commission found the worker's testimony that he did not re-injure his left knee during the treadmill stress test to be credible and that the injured knee had already been causing pain that merely intensified during the stress test.

However, it was a mistake to bottom our decision in *Carter* upon *Guidry*. The "specific intent" of the General Assembly in stating the effect of Act 796 on "*all prior opinions or decisions of any administrative law judge, the Workers' Compensation Commission, or courts of this state contrary to or in conflict with any provision in this act*" was to prevent holdings such as *Guidry* from influencing workers' compensation claims for injuries, illnesses, and deaths occurring after July 1, 1993. Thus, *Guidry* should not have been cited in the *Carter* opinion because it was legislatively superseded, if not outright overruled, by Ark. Code Ann. § 11-9-102(4)(F)(iii). To the extent that the majority relies upon our decision in *Carter* which relied upon *Guidry*, that reliance is mistaken.

And it is abundantly clear that Ark. Code Ann. § 11-9-102(5)(F)(iii) directly conflicts with preexisting workers' compensation law as expressed by *Guidry*. Prior to enactment of Act 796, a line of cases dating back to our supreme court's decision in *Alumi-*

*num Co. of America v. Williams*, 232 Ark. 216, 335 S.W.2d 315 (1960), applied the standard followed in *Guidry* that there is no independent intervening cause unless the subsequent disability is triggered by activity on the part of the claimant which is unreasonable under the circumstances. In *Guidry*, our court concluded that "not only can there be an independent intervening cause without negligence or recklessness on the claimant's part, but unreasonable conduct on a claimant's part may create an independent intervening cause which would otherwise not exist." 11 Ark. App. at 224, 669 S.W.2d at 486; *see also Moss v. El Dorado Drilling Co.*, 237 Ark. 80, 371 S.W.2d 528 (1963); *Aluminum Co. of America v. Williams, supra.* Thus, *Guidry* and other decisions predating Act 796 focused on the reasonableness of the claimant's conduct in determining whether that conduct constituted an independent intervening cause. Negligence and recklessness are legal concepts universally understood in law to relate to whether conduct is reasonable.

The practical effect of those holdings, as the cases plainly show, was that subsequent conditions following initial work-related injuries were often deemed compensable as recurrences — meaning mere continuation of the work-related injuries rather than aggravations — so that subsequent incidents rarely were deemed independent intervening causes before Act 796 was enacted. In numerous instances the subsequent incident occurred after the worker left the first employment so that the subsequent employer and the claimant had a mutual interest in having the subsequent incident covered by the first employer. Even where the subsequent incident took place when the claimant remained employed by the same employer, the fact that a different workers' compensation insurer was providing coverage when the second incident occurred meant that the second incident was often alleged by the claimant and the new insurer to be a recurrence rather than an aggravation. Doing so avoided disproving that the second or subsequent incident involved unreasonable conduct or misconduct. In short, the prevalent practice before Act 796 took effect was to cite Arthur Larson's treatise on workers' compensation law — as our supreme court did in *Aluminum Co. of America v. Williams*, and as our court did in *Guidry* — for the proposition that:

> When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the

result of an independent intervening cause attributable to claimant's own negligence or misconduct.

See *Aluminum Co. of America v. Williams, supra,* at 232 Ark. 215, 232, 335 S.W.2d 315, 319 (1960); *see also Bearden Lumber Co. v. Bond,* 7 Ark. App. 65, 644 S.W.2d 321 (1983).

Thus, in *Home Ins. Co. v. Logan,* 255 Ark. 1036, 505 S.W.2d 25 (1974), our supreme court affirmed, as supported by substantial evidence, a Commission decision that awarded additional permanent disability benefits to a worker who sustained a 1967 back injury while lifting furniture at work. He (Logan) underwent back surgery and was initially awarded a 20 percent permanent disability rating. Then he found work with other employers and was involved in an automobile accident. In August 1970, he returned to the doctor who had performed the back surgery with renewed symptoms after he lifted a butane tank, felt a pop and pain in his back, and pain in both legs. The doctor attributed the new complaints to "fatigue" from attempting to do too much at one time and not getting enough rest. Based on that assessment and Logan's testimony that the pop and pain in his back didn't hurt any more than a lot of other things, the supreme court affirmed the Commission's decision increasing Logan's permanent partial disability to 35 percent to the body as a whole on account of the doctor's 1971 impairment evaluation. Not even the passage of time, reemployment, and a new set of symptoms could produce a holding that the 1970 episode constituted an independent intervening cause, *even when the subsequent event was termed an "aggravation."*

In *Pinkson v. General Tire & Rubber Co.,* 30 Ark. App. 46, 782 S.W.2d 375 (1990), we affirmed that part of the Commission's decision holding awarding additional medical benefits to a man who suffered a compensable back injury in July 1982 but who testified that his back "went out" while he was drying off after getting out of his bathtub in January 1986. The Commission deemed the subsequent incident a recurrence, meaning a continuation of the first compensable injury.

Another example of pre-Act 796 law on this subject is seen in *Atkins Nursing Home v. Gray,* 54 Ark. App. 125, 923 S.W.2d 897 (1996). That case involved a claim for additional compensation benefits by a certified nurse's aide who sustained a compensable back injury in July 1992, diagnosed as a muscle strain with spasm,

for which she missed a day of work, rested over the weekend, and received medical treatment. More than a year later — August 20, 1993 — the aide lifted a patient into a shower chair and felt a hot burning sensation in the same area that she injured in July 1992. She filed a claim for additional benefits and contended that the 1993 incident was a recurrence of the 1992 injury rather than an aggravation because she remained symptomatic after the 1992 incident and the 1993 problem involved the same area of her back as the previous injury. We affirmed the Commission's decision that directed the employer to pay all reasonable medical expenses associated with the 1993 incident and held that Act 796 did not apply to the claim. We reached that decision, despite the fact that the subsequent incident occurred more than a month after Act 796 took effect and more than a year after the claimant sustained the first injury, because the claimant "did not sustain an injury after July 1, 1993, but merely another period of incapacitation." *Id.* at 129, 923 S.W.2d at 900. What would have otherwise been a question of independent intervening cause analysis instead focused on whether the subsequent condition was a recurrence (continuation of the prior work-related injury) or an aggravation (meaning a new injury). These cases show how the Commission and appellate courts treated independent-intervening-cause analysis before Act 796 was enacted containing Ark. Code Ann. § 11-9-102(5)(F)(iii).

It is a fundamental doctrine of statutory construction that the legislature, when enacting a statute, is presumed to have in mind court decisions pertaining to the subject legislated on and to have acted with reference thereto. *Service Chevrolet v. Atwood*, 61 Ark. App. 190, 966 S.W.2d 909 (1998). That doctrine should dispel any notion that the statement in the majority opinion — that "the case law regarding independent intervening causes also remains in force for new act cases" — is correct. Act 796 was enacted during a special session of the Arkansas General Assembly convened solely to address workers' compensation law reform. Act 796 was enacted by legislators who knew about *Logan, Pinkston, Guidry,* and similar decisions, and who plainly wanted the law changed. The workers' compensation bar and our court realized that Act 796 was intended to change the caselaw that had existed as far back as 1960 and the supreme court's decision in *Aluminum Co. of America v. Williams, supra.,* as evidenced by the decision in *Atkins Nursing Home v. Gray.* Had the General Assembly not intended to change prior law

regarding nonwork-related independent causes, there was no reason for it to include Ark. Code Ann. § 11-9-102(5)(F)(iii) in Act 796. Therefore, it is mind-boggling that the majority today holds that the case law regarding independent intervening causes remains in force for Act 796 cases.

It is equally fundamental that the primary rule for construing legislation is to ascertain and give effect to the intent of the legislature, and when that intent is clear, there is no room for other interpretation or construction. *Pledger v. Mid-State Const. & Materials, Inc.*, 325 Ark. 338, 925 S.W.2d 412 (1996). Where the intention of the legislature is clear from the words used, there is no room for construction, and no excuse for adding to or changing the meaning of the language employed. *Littles v. Flemings*, 333 Ark. 476, 970 S.W.2d 259 (1998). We have also stated that where statutory language is plain and unambiguous, we will give that language its plain meaning and will determine that meaning from the natural and obvious import of the language used by the legislature without resorting to subtle and forced construction for purpose of limiting or extending its meaning. *Smith v. Smith*, 41 Ark. App. 29, 848 S.W.2d 428 (1993). In interpreting a statute and attempting to construe legislative intent, we look to the language of the statute, the subject matter, the object to be accomplished, purpose to be served, remedy provided, legislative history, and other appropriate matters that throw light on the matter of legislative intent. *Weyerhaeuser Co. v. Johnson*, 48 Ark. App. 100, 891 S.W.2d 64 (1995).

The majority cites no authority for the proposition that judges are authorized to deliberately disregard the explicit "specific intent" of the Arkansas General Assembly, whether in workers' compensation cases or otherwise. If the General Assembly did not intend to prevent holdings such as *Guidry* from influencing workers' compensation claims for injuries, illnesses, and deaths occurring after July 1, 1993, when it declared at Ark. Code Ann. § 11-9-1001 that the effect of Act 796 was to *"repeal, annul, and hold for naught all prior opinions or decisions of any administrative law judge, the Workers' Compensation Commission, or courts of this state contrary to or in conflict with any provision in this act,"* the members of the Seventy-Ninth General Assembly would not have said that was their intent. Rather, the General Assembly plainly intended that Ark. Code Ann. § 11-9-102(5)(F)(iii), added to the workers' compensation law by Act 796, would repeal *Guidry* and all other preexisting judicial decisions on

the subject of independent intervening cause. It is amazing that the majority now asserts that "this section is not a blanket legislative repeal of our prior decisions on this subject."

Act 796 exists because a super-majority (two-thirds) of the Arkansas General Assembly enacted it. Those legislators were not obtuse. Indeed, Ark. Code Ann. § 11-9-1001, the section of Act 796 declaring their intent, shows that they expected their work product to be unpopular with administrative law judges, the Workers' Compensation Commission, and the courts — including this court. That is why the General Assembly concluded Act 796 as follows:

> The Seventy-Ninth General Assembly realizes that the Arkansas workers' compensation statutes must be revised and amended from time to time. *Unfortunately, many of the changes made by this act were necessary because administrative law judges, the Workers' Compensation Commission, and the Arkansas courts have continually broadened the scope and eroded the purpose of the workers' compensation statutes of this state....* It is the specific intent of the Seventy-Ninth General Assembly to repeal, annul, and hold for naught *all prior opinions or decisions of any administrative law judge, the Workers' Compensation Commission, or courts of this state contrary to or in conflict with any provision in this act. In the future, if such things as ... the extent to which any physical condition, injury, or disease should be excluded from or added to coverage by the law, or the scope of the workers' compensation statutes need to be liberalized, broadened, or narrowed, those things shall be addressed by the General Assembly and should not be done by administrative law judges, the Workers' Compensation Commission, or the courts.*

(Emphasis added.)

I refuse to read Ark. Code Ann. § 11-9-102(5)(F)(iii) out of Act 796. I do not believe the General Assembly was ignorant about *Guidry* and similar decisions when it included this statute in Act 796. I find nothing unclear or ambiguous about the statute and fully understand that the General Assembly meant what it said and said what it meant at Ark. Code Ann. § 11-9-1001 when it declared its "specific intent" to "repeal, annul, and hold for naught all prior opinions or decisions of any administrative law judge, the Workers Compensation Commission, or courts of this state contrary to or in conflict with any provision in this act." And given the decision and analysis announced by the majority opinion, I suspect that I am not alone in wondering what part of *"all* prior opinions or decisions of

*any* administrative law judge, the Workers' Compensation Commission, or *courts* of this state contrary to or in conflict with *any provision in this act*" is so hard for the majority to understand.

I respectfully dissent and am authorized to state that Judge BIRD joins this opinion.