SLIP OPINION



# ARKANSAS COURT OF APPEALS

DIVISION II
No. CV-13-1128

| | |
|---|---|
| JAMES ELLIOTT LOAR, JR. (DECEASED)<br><br>APPELLANT<br><br>V.<br><br>COOPER TIRE & RUBBER CO. ET AL.<br><br>APPELLEES | Opinion Delivered April 23, 2014<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION [NO. F505209]<br><br>AFFIRMED; CROSS-APPEAL MOOT |

## JOHN MAUZY PITTMAN, Judge

This is an appeal from a decision of the Arkansas Workers' Compensation Commission denying death benefits to the surviving beneficiaries of the decedent, Mr. James Loar, Jr. Loar overdosed on methadone in 2009 while being treated for withdrawal from opiates prescribed for pain resulting from his 2005 compensable injury. The Commission denied benefits, finding that decedent was prone to drug addiction; that he intentionally overdosed without suicidal intentions; and that his intentional overdose was an independent intervening cause unconnected with the work. The beneficiaries argue that the evidence is insufficient to support the Commission's finding. We affirm.

Arkansas Code Annotated section 11-9-527 (Repl. 2012) provides for death benefits to be paid to dependents of workers who die as the result of compensable injuries. However, by definition, "benefits shall not be payable for a condition which results from a nonwork-related independent intervening cause following a compensable injury which causes

or prolongs disability or a need for treatment." Ark. Code Ann. § 11-9-102(4)(F) (Repl. 2012). Such a nonwork-related independent intervening cause does not require negligence or recklessness on the part of a claimant, *id.*, but will arise if the death is the result of conduct by the decedent that was unreasonable under the circumstances. *See Guidry v. J & R Eads Construction Co.*, 11 Ark. App. 219, 669 S.W.2d 483 (1984).

In reviewing workers' compensation decisions, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if the decision is supported by substantial evidence. *Wal-Mart Stores, Inc. v. Sands*, 80 Ark. App. 51, 91 S.W.3d 93 (2002). Substantial evidence is that which a reasonable person might accept as adequate to support a conclusion. *Olsten Kimberly Quality Care v. Pettey*, 328 Ark. 381, 944 S.W.2d 524 (1997). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *White v. Georgia-Pacific Corporation*, 339 Ark. 474, 6 S.W.3d 98 (1999). The determination of the credibility and weight to be given a witness's testimony is within the sole province of the Commission; the Commission is not required to believe the testimony of any witness but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Farmers Cooperative v. Biles*, 77 Ark. App. 1, 69 S.W.3d 899 (2002). The Commission has the duty of weighing the medical evidence as it does any other evidence, and its resolution of the medical evidence has the force and effect of a jury verdict. *Continental Express v. Harris*, 61 Ark. App. 198, 965 S.W.2d 811 (1998).



Here, the Commission made the following findings with respect to the decedent's overdose:

1. The claimant died of an acute Methadone intoxication or overdose on September 7, 2009.

2. The claimant obtained his Methadone prescription on September 3, 2009, and the prescription provided that the claimant would take six Methadone pills per day.

3. Between September 3, 2009, and September 7, 2009, the claimant consumed 41 Methadone pills, which was 17 pills in excess of the 24 pills that he should have taken by prescription.

4. The claimant became addicted to opioid medication prescribed for back pain by at least May 11, 2004, approximately one year before his back injury at work on April 23, 2005.

5. In the summer of 2009, the claimant obtained and consumed Oxycontin at the average rate of 4.7 pills per day when he was prescribed three pills per day.

6. On the day before he died, the claimant's wife requested that the claimant stop taking Methadone until he could see a doctor, but he continued to take Methadone thereafter.

7. The claimant did not consume the extra 17 Methadone pills in order to commit suicide, to engage in a suicide gesture, or to engage in a dramatic act.

8. The claimant's consumption of 17 Methadone pills in excess of his prescription at some point between September 3, 2009, and September 7, 2009, is an independent intervening cause of his death. Specifically, the claimant has failed to establish that his 2009 Methadone overdose is causally related to his 2005 work-related back injury. In addition, the claimant's overdose was unreasonable under the circumstances.

The record supports these findings, and we cannot say that reasonable minds could not have arrived at the Commission's conclusion on these facts. Here, there was evidence that the decedent had been using opiates for some time prior to his compensable injury; had a proclivity to drug addiction; had been filling Oxycontin prescriptions from two different

doctors and taking almost twice the recommended dose; went to another, unapproved physician for methadone because it was cheaper than Oxycontin; and took a substantial overdose of the methadone—seventeen more pills than the twenty-four prescribed in the few days prior to his death. Furthermore, the fact that decedent was able to coach football and travel to Louisiana for football equipment shortly before his death supports the finding that his overdose was not in response to uncontrolled pain but was instead simply the result of his drug addiction. Evidence that the decedent was plainly intoxicated on the methadone shortly before his death to such a degree that his wife hid his medications and threatened to have him committed also supports this finding.

It is true that there are cases, notably *Eagle Safe Corp. v. Egan*, 39 Ark. App. 79, 842 S.W.2d 438 (1992), where we have affirmed a finding of the Commission that an overdose in pain medication was not unreasonable where the dosage had not been adequately explained, the overdose was not excessive, and the death closely followed the injury. In those circumstances, we held that the Commission could reasonably find that the overdose was a reasonable response to work-related pain. However, we neither said nor implied in *Eagle Safe* that the Commission could not reasonably have found to the contrary. An often misunderstood point of appellate practice is that a given state of facts may support more than one reasonable conclusion; thus, an appellate decision holding that a finding is reasonable does not mean that a contrary finding would be *ipso facto* unreasonable. Furthermore, the factual situations presented here and in *Eagle Safe* are not as similar as the beneficiaries suggest. Here, the death is much more attenuated from the injury—four years later, with a history of

susceptibility to addiction and of abuse of opiates prior to the compensable injury. Consequently, we hold that the Commission could reasonably find, on this record, that the decedent's overdose and resultant death was unreasonable and thus was an independent intervening cause not related to the work.

Our resolution of this issue renders moot the issue on cross-appeal, which concerned whether a physician's treatment was authorized, and we therefore do not address it.

Affirmed; cross-appeal moot.

HARRISON and GRUBER, JJ., agree.

*Moore, Giles & Matteson, LLP*, by: *Greg Giles*, for appellant.

*Barber, McCaskill, Jones & Hale, P.A.*, by: *Frank Baucum Newell*, for appellees.